(125 So. 903)

### STATE ex rel. GAMBILL v. McELROY, Judge, etc. (6 Div. 507.)

Supreme Court of Alabama. Jan. 23, 1930.

Coleman, Coleman, Spain & Stewart, of Birmingham, for respondent.

Crampton Harris, Harold M. Cook, and Leader & Ullman, all of Birmingham, for petitioner.

SAYRE, J. F. A. Gutelius, as receiver of the Farmers' Bank & Trust Company of West Palm Beach, Fla., brought suit in the circuit court of Jefferson, in this state, on a promissory note for $32,500, executed, to quote the second count of the complaint, "on, to-wit: June 11, 1926, by the Northwood Investment Company at West Palm Beach. Florida, which note was due and payable ninety (90) days after date, and payable to L. M. Studstill, A. A. Gambill and E. B. Pennington, at Farmers' Bank and Trust Company, West Palm Beach, Florida, by all of whom said note was endorsed to the Farmers Bank and Trust Company, West Palm Beach, Florida, and said note was also endorsed by D. F. Dunkle. And paintiffs aver that said note was not paid at maturity." A: A. Gambill, named as sole party defendant, having pleaded, in substance, the facts to be hereafter noted, and demurrer to his plea

having been sustained, moved the court to make an order "transferring such cause from the law side of the court to the equity side of the court," as provided by section 6488 of the Code. The court, having sustained a demurrer to the motion, defendant, Gambill, has petitioned this court for a writ of mandamus to the judge of the circuit commanding him to make an order overruling the demurrer and transferring the cause to the equity side of the court.

■■ The contractual relations between the parties to the note in suit are determinable according to the law of Florida, properly invoked. In the absence of such invocation, efficiently made, the courts of this state, not being charged with knowledge of the law of Florida (Cubbedge v. Napier, 62 Ala. 518), will dispose of the cause according to the substantive law of this state. Peet v. Hatcher, 112 Ala. 514, 21 So. 711, 57 Am. St. Rep. 45; Southern Express v. Owens, 146 Ala. 412, 41 So. 752, 8 L. R. A. (N. S.) 369, 119 Am. St. Rep. 41, 9 Ann. Cas. 1143. And, of course, the procedural law of this state must be followed.

Petitioner in this cause shows to the court as ground of equity, and so of cause for the transfer to the equity side of the court, and therefore as sufficient reason for the writ here moved for, facts as follows, in substance: At the time of the delivery to the bank—so for convenience to speak of the Farmers' Bank & Trust Company of West Palm Beach —of the note in suit, Dunkle, who along with petitioner and others, indorsed the same, and who was a man of great wealth and president of the Northwood Investment Company, deposited bonds of that company of the value of $35,000 with the bank as collateral security; that the investment company and Dunkle "were the real makers and the parties benefited by said note and the discount thereof, in that the money which had arisen from the discount of a previous note (of which the said note is a mere renewal), had been used with the knowledge and consent of said bank to pay off and discharge an encumbrance on property by the said Northwood Investment Company, and which said encumbrance had been assumed by the Northwood Investment Company, and that the bank would look primarily to said Northwood Investment Company and/or D. F. Dunkle and to the collateral so pledged for payment of said note, and defendant says that when said note of June 11, 1926 fell due on September 11, 1926 it then and there became the duty of said bank, by reason of said special agreement, to exercise diligence to protect this defendant, as an accommodation endorser of said note, against any loss or damage on account of the default of the said D. F. Dunkle and Northwood Investment Company in the payment thereof"; that "the said bank, either negligently and in violation of its duty to the defendant, or wrongfully and in fraudulent collusion with the said D. F. Dunkle and the Northwood Investment Company, procrastinated and delayed for more than two years to take any steps to fasten liability upon the Northwood Investment Company and the said D. F. Dunkle, or to convert said securities into money and apply the same to the exoneration of this defendant on said note"; and, repeating the idea in phraseology somewhat different, "this defendant avers that if said bank had acted with reasonable skill and promptness when said note became due and payable it could have converted said bonds into money of more than sufficient amount to pay off and discharge the entire amount of said note, or could have collected the amount of said note out of said D. F. Dunkle, or the Northwood Investment Company, but said bank delayed and neglected negligently or wilfully and fraudulently to take such steps, and knowing or having notice of the fact that said bonds were becoming daily of less and less value after December 15, 1926, on account of the depreciation in the value of the real estate, which was the security for said bonds, so that prior to the bringing of the suit in this cause against this defendant, the said Northwood Investment Company and the bonds of the Northwood Investment Company so deposited, had become entirely worthless, and said company had been wrecked by the said D. F. Dunkle and the said D. F. Dunkle had been adjudicated a bankrupt in the District Court of the United States in Florida."

It will have been observed that the gist of the charge of negligence or fraud is to be found in the averment that the bank, knowing that the bonds were daily depreciating in value on account of the depreciation in the value of the real estate by which they were secured, neglected to take steps for the collection of the note here in suit out of Dunkle or the Northwood Investment Company. Otherwise stated, the charge is that the bank delayed to enforce its claim against the surety until the principle in the debt became insolvent.

■■ To quote the language of the Supreme Court of Indiana in a case involving similar principles of justice and equity: "It has never been held that the mere passiveness of the creditor in the collection of his debt, either of the principal debtor, or from collateral securities held by him, is sufficient ground for discharging the surety." Vance v. English, 78 Ind. 80, 83. And from Schroeppell v. Shaw, 3 N. Y. 446, in reference to collateral securities, we quote: "The creditor is under no obligation of active diligence for the protection of the surety, so long as the surety himself remains inactive. Until the surety moves in the matter, it is enough that the creditor holds himself in readiness to transfer to him, when he applies, all the securities

he holds, that he may have the benefit of such securities in aid of his own responsibility." In White v. Life Association, 63 Ala. 425, 430, 35 Am. Rep. 45, this court, speaking by Brickell, C. J., said: "Mere gratuitous indulgence of the principal, whether extended at his request, or without it yielded by the creditor from sympathy, from an inclination to favor him, or the result of mere passiveness, will not operate to discharge the surety." Certainly, the creditor will not be allowed to do any act which will injure the surety, or, if he does, "the court is very glad to lay hold of it in favor of the surety." But, in absence of some such wrong, the surety's remedy is, after the debt falls due, to offer, by formal tender, to pay it and take an assignment of the security. Brandt on Suretyship (3d Ed.) § 373. Or, the surety, before he has paid the debt, may maintain a bill quia timet against the debtor to compel him to pay, provided the creditor can himself enforce payment or performance, and neglects or refuses to do so. 4 Pomeroy, Eq. Jur. (4th Ed.) § 1417.

We need not repeat the averments of the motion to transfer the cause. It will have been noted that its equity depends upon the sufficiency of the averments we have been at pains to quote. As for the charge of fraudulent collusion, since, as we have seen, that charge may not be rested upon delay alone, the mere general charge cannot suffice to sustain the equity of the bill. "There must be a positive averment of facts from which the court can see clearly that fraud has intervened." McDonald v. Pearson, 114 Ala. 642, 21 So. 534, 536, where authorities are cited. Fraud is not presumed. And, as for the charge of negligence, the motion for an order of transfer can in reason be understood as meaning nothing more than an averment that the bank failed to proceed for the collection of the note when it might have so proceeded. With the practical difficulties of the procedure suggested by petitioner in his motion we are not now concerned. The court deals with averments of fact. As the courts generally have held, mere delay was no wrong against the petitioner, for, if he would have preferred action against the principal debtors, it was for him to pay the debt and then proceed on his own account to collect from them. We find in the record no averment that would justify an inference that, to employ the language of Chief Justice Brickell in White v. Life Association, supra, there was a design on the part of the creditor, the bank, to fasten on the property of the surety, petitioner in this cause, a liability for the debt due to it in ease of the estate of the principal debtor. Certainly there is no specific averment to that effect.

There is no claim, nor any averment suggesting a claim, that petitioner at any time adopted or sought to adopt the remedy provided by section 9555 of the Code, which provides that a surety may require a creditor to sue the principal or other sureties and be discharged on the creditor's failure so to do. That defense would have been available on the law side of the court. Dampski bsaktieselskabet Habil v. U. S. Fidelity & Guaranty Co., 142 Ala. 363, 39 So. 54. In the cited case this court stated the general rule to be that the creditor cannot be compelled to exhibit his remedy against the principal before proceeding against the surety.

Writ denied.

ANDERSON, C. J., and THOMAS and BROWN, JJ., concur.