142 So.2d 681

Nettie F. **LIGHTSEY**

**v.**

**FIRST NATIONAL BANK OF BIRMINGHAM.**

**6 Div. 783.**

Supreme Court of Alabama.

June 14, 1962.

Cabaniss & Johnston, Drayton T. Scott and Maxwell Alston, Birmingham, for appellee.

---

Jenkins & Cole, Birmingham, for appellant.

**418**

MERRILL, Justice.

This is an appeal from a judgment of nonsuit caused by the sustaining of demurrers to the several counts of plaintiff's complaint. It is agreed that the court did not err in sustaining demurrers to Counts I, II and III. The argument here is that the court erred as to Counts IV, V, VI and VII.

The suit arose out of a contract dated March 2, 1949, prepared by the defendant, wherein the plaintiff agreed to sell to the defendant customer contracts representing the deferred payments for merchandise sold by the plaintiff, and this agreement was made an exhibit to the complaint. There was full recourse on the plaintiff. Plaintiff was under no obligation to submit all customer contracts to defendant, but only those of her own choosing, and defendant had the right to reject any contract. Under the original contract, the defendant would retain five per cent of the money paid plaintiff upon discount as a reserve account to cover any default in paper which might arise. This was later increased to seven per cent by an amendment. This operation continued until 1953.

Plaintiff charges that the defendant failed to exercise reasonable care and diligence in making and receiving the collections on the contracts; that the defendant allowed the accounts to get in arrears and the defendant suddenly, and without notice to the plaintiff, called upon the plaintiff to repurchase all the paper that was in default, which it had a right to do under the contract. The defendant had the right to make and receive all collections and the plaintiff could not solicit or make any collections, repossessions or compromises except as instructed by the defendant, and the defendant had the right "to renew and extend the time of payment or compromise or adjust claims on contracts or merchandise covered," without affecting plaintiff's liability as endorser.

Count IV alleged that the defendant negligently allowed fifty to one hundred delinquent accounts to accumulate without notice or knowledge to the plaintiff and that, in this, the defendant breached the contract.

Count V was substantially the same as Count IV. Count VI charges the failure to use reasonable care or diligence in making collections and avers that during the months of March through June, 1953, plaintiff made inquiries of the defendant as to the status of the contracts and collections, whether they were current, etc. It further avers that the defendant informed plaintiff that the collections were current and plaintiff's assistance was not needed to effect collections. But subsequent thereto in the same month, fifty to one hundred delinquent contracts were dumped on the plaintiff and plaintiff was called upon to pay same. Plaintiff argues that an additional responsibility or duty was placed upon defendant when plaintiff asked for information.

Count VII of the complaint alleges that the original contract was amended by an oral agreement between plaintiff and defendant, whereby defendant agreed to accept and discount customers' contracts provided the customers had good credit rating and were financially responsible, and that the defendant breached the contract by refusing to purchase at discount or accept said customer contracts although they were offered contracts of customers who had good credit rating and were financially responsible.

Both appellant and appellee concede in brief that the agreement created the relationship of creditor and surety between the defendant and plaintiff.

 We think our case of State ex rel. Gambill v. McElroy, 220 Ala. 452, 125 So. 903, is dispositive of the case in that it supports the ruling of the trial court on all the counts except Count VII. McElroy was the endorser of a note for $32,500 executed on June 11, 1926, and due

and payable ninety days after date. At the time of the execution of the note and at the time that it became due, another endorser (who it was alleged was in truth and in fact the maker) was solvent and there was deposited as collateral security bonds sufficient in value to pay the indebtedness. The bank did not call upon the maker or seek to proceed against the collateral or notify the endorser of the default for more than two years after default. Upon his refusal to pay, the bank brought suit only against the endorser. The defendant alleged that he was only an accommodation endorser and that the bank was under a duty to exercise diligence to protect him from ultimate liability. He further alleged that the bank not only did not exercise due diligence but "negligently and in violation of its duty to the defendant, wrongfully and in frauduelnt collusion" with the maker, failed to collect the note. The endorser alleged in another paragraph that if the bank had acted with reasonable skill and promptness, it could have recovered the monies from the maker or the collateral but that the bank "neglected negligently or wilfully and fraudulently to take such steps" and thus was forced to call upon the endorser.

This court held that the facts alleged did not state a good defense. We said that the bank was under no duty to the endorser to use diligence to effect collection, nor was it under any duty to notify the endorser of the status of the account at any time. The court stated that on the contrary, the endorser had his remedy by paying the debt and then proceeding on its own account to collect from the principal or on the collateral. The court further stated that there was no averment that the endorser at any time sought to adopt the remedy provided by Section 9555 of the Code (now Tit. 9, § 89, Code 1940), which allows a surety to require the creditor to sue the principal or other sureties.

Summarizing, in the McElroy case, we held that neither negligence, wilfullness nor fraud of the creditor, nor failure to notify the endorser of the default was a sufficient defense. Here, we have only the allegations of negligence and failure to notify.

A case in point is McMullan v. Community Acceptance Corp., 78 Ga.App. 616, 51 S.E.2d 575. There, McMullan sold automobiles on conditional sales contracts and immediately assigned these sales contracts to Community Acceptance Corp. at a discount. The contract between McMullan and the Acceptance Corporation provided, in substance, that McMullan would repurchase from the Acceptance Corporation any contract which proved to be in default. On the particular sale in question, no payment was ever made to the Acceptance Corporation by the conditional vendee and after nearly six months, the Acceptance Corporation demanded that McMullan repurchase the sales contract. McMullan refused to repurchase the contract and defended the suit of the Acceptance Corporation on the ground that the Acceptance Corporation violated a duty to him by not requiring payments to be made promptly each month and failing to give notice to him of the default. The trial court directed a verdict for the Acceptance Corporation and the Court of Appeals affirmed.

The court held that the contract between the parties was one of suretyship on the part of McMullan, that the failure of the Acceptance Corporation to proceed against the conditional vendee was no defense, and that there was no obligation that McMullan be notified of the default.

These authorities support the principle that the assignor of a conditional sales contract who waives statutory conditions as to liability by endorsement occupies the position of a surety and there is no duty of a creditor to its surety to make collections, or to notify the surety of the status of the collections.

Count VII, in part, adopts Count IV in setting forth the Dealer Protective Agreement and that the defendant negligently al-

420

lowed delinquent and defaulting customers' contracts to be in arrears, backlog and pile-up, negligently taking no action to effect collection and not requesting the plaintiff's assistance in same. It is further averred that on October 13, 1953, for a consideration, the plaintiff and defendant modified the original Dealer Protective Agreement by the amendment, and in addition, an oral agreement was made whereby defendant agreed to accept conditional sale contracts from the plaintiff where the customers had "good credit rating and were financially responsible" and further avers that the defendant failed and refused to comply with the terms and provisions by summarily refusing to consider, purchase, discount or accept financially responsible and good credit rating customers' contracts.

This count was demurrable because it failed to allege that the oral agreement was made by an agent, servant or employee of the appellee while acting within the line and scope of his employment. The allegation is only that "defendant agreed." This is not sufficient. Montgomery v. Chemical National Bank, 209 Ala. 585, 96 So. 898.

Moreover, the count is bad under the parol evidence rule. It is settled that where there exists between the parties a written contract, parol evidence cannot be received to explain, contradict, vary, add to, or subtract from its terms. Hartford Fire Ins. Co. v. Shapiro, 270 Ala. 149, 117 So.2d 348, and cases there cited, And "a plea is bad which sets up a statement of facts of a contemporaneous verbal agreement which is repugnant to and contradictory to the terms of the written instrument declared upon and the express intention of the parties therein contained." Steiner Bros. v. Slifkin, 237 Ala. 226, 186 So. 156, and cases there cited.

The demurrers to the counts of the complaint were properly sustained.

Affirmed.

LIVINGSTON, C. J., and SIMPSON and HARWOOD, JJ., concur.