This is a case involving the Uniform Commercial Code, §§7-1-101, et seq., Code of Ala. 1975.
Commercial Credit Equipment Corporation (CCEC) sued Toomey Equipment Company (Toomey), alleging a breach of contract. The trial court granted CCEC's motion for summary judgment and Toomey appeals. We reverse and remand.
The threshold issue on appeal is whether art. 9 of the Uniform Commercial Code (UCC) applies to the transaction between CCEC and Toomey. If art. 9 is applicable, we must also decide whether there remained a genuine issue of material fact concerning CCEC's alleged failure to use reasonable care in preserving Toomey's rights against a prior party.
The record reveals the following: Toomey sold one N.B. Bohannon certain farming equipment under a "purchase security agreement" containing a promissory note. The agreement, which was on a printed form apparently provided by CCEC, obligated Mr. Bohannon to make yearly payments for the years 1975 through 1978. Under the agreement, Toomey retained a security interest in the equipment.
The writing also contained a provision wherein Toomey simultaneously sold or assigned the agreement to CCEC for value received. As a consequence of this transfer, Mr. Bohannon was to make all payments directly to CCEC. *Page 1157 
Under the assignment, Toomey agreed to the following:
 If CCEC should repossess or come into the possession of any property described in said Agreement we will purchase such property immediately upon demand in its then condition and location, and will pay CCEC therefor the unpaid balance owing on said Agreement, or that portion of the unpaid balance owing on said Agreement applicable to such property, plus any costs or expenses, including attorney's fees, incurred by CCEC in connection therewith. If we fail or refuse to purchase said property, then CCEC may sell the same at public or private sale, with or without notice to us, and we will pay CCEC the difference between the net amount realized from such sale and the purchase price provided for above. We agree that CCEC may audit our books and records relating to agreements sold to CCEC and that CCEC may, without notice to us and without releasing our liability hereunder grant extensions of time of payment of said Agreement and release any rights thereunder, and we waive presentment and demand for payment, protest or notice of protest. We shall have no authority without CCEC's prior written consent to accept collections, repossess or consent to the return of said Agreement.
Mr. Bohannon subsequently died before final payment was made and a default ensued. CCEC then repossessed the equipment.
Pursuant to the above quoted recourse agreement CCEC demanded that Toomey repurchase the equipment. Toomey refused to do so. CCEC then sold the property and, after giving Toomey credit for the amount received, brought suit against Toomey seeking to recover the deficiency.
Toomey responded by moving for summary judgment. In support of this motion, Floyd Toomey, the company's president, filed an affidavit stating that CCEC did not demand repurchase nor authorize any steps by Toomey against Mr. Bohannon's estate until more than six months after Bohannon's death. Mr. Toomey contended that the non-claims statute was allowed to run as a result of this failure to give notice and that Toomey was therefore left with no recourse against Mr. Bohannon's "very solvent" estate.
CCEC also moved for summary judgment and filed the affidavit of its regional manager, J.L. Stewart. In this affidavit, Mr. Stewart stated that Toomey knew of Mr. Bohannon's death.
As indicated, we must first decide whether art. 9 of the UCC applies to Toomey's assignment or sale of the agreement to CCEC so that we may properly determine the rights and responsibilities of the parties.
On appeal, Toomey argues that art. 9, which covers secured transactions, governs the transfer at hand. It is Toomey's further contention that by failing to give notice of Mr. Bohannon's death, CCEC violated § 7-9-207 (1), which reads:
 A secured party must use reasonable care in the custody and preservation of collateral in his possession. In the case of an instrument or chattel paper reasonable care includes taking necessary steps to preserve rights against prior parties unless otherwise agreed. (Emphasis supplied.)
CCEC, through able and distinguished counsel who has favored this court with an excellent brief, puts forth several arguments in support of the trial court's action.
CCEC first argues that the UCC simply does not apply to the transaction and relies upon pre-code Alabama cases which, in effect, would treat Toomey as a surety under the facts at bar and relieve CCEC of any duty to give notice of the buyer's default. See, Lightsey v. First National Bank of Birmingham,273 Ala. 416, 142 So.2d 681 (1962); State v. McElroy, 220 Ala. 452,125 So. 903 (1930).
CCEC argues alternatively that if the UCC does apply, art. 3, which deals with negotiable instruments, and not art. 9, governs.
Finally, CCEC puts forth two theories which would exonerate it from any possible liability even if art. 9 does govern. It first *Page 1158 
argues that § 7-9-207 (1) does not replace the above referenced pre-code law. Next, pointing to that part of § 7-9-207 (1) which allows the parties some freedom to negotiate, CCEC argues Toomey waived any right to notice when it entered into the assignment agreement.
Addressing these issues, we first conclude that art. 9 governs the instant transaction. Section 7-9-102 (1)(a) extends application of this article to "any transaction (regardless of its form) which is intended to create a security interest in personal property . . including . . . chattel paper, accounts or contract rights,. . . ." Furthermore, § 7-9-102 (1)(b) extends coverage to "any sale of accounts, contract rights or chattel paper."
The official comment to § 7-9-102 provides:
 An assignment of accounts, contract rights or chattel paper as security for an obligation is covered by subsection (1)(a). Commercial financing on the basis of accounts, contract rights and chattel paper is often so conducted that the distinction between a security transfer and a sale is blurred, and a sale of such property is therefore covered by subsection (1)(b) whether intended for security or not,. . . . The buyer then is treated as a secured party, and his interest as a security interest. . . .
It is clear to this court that the transaction at hand, whether it be classified as assignment or sale, is contemplated by § 7-9-102. Therefore, the article is to be applied if the parties and the property transferred meet the definitional requirements put forth elsewhere.
We conclude these requirements are met, first noting that the property transferred to CCEC by Toomey was chattel paper as it consists of a writing which evidences "both a monetary obligation and a security interest in . . . specific goods." § 7-9-105 (1)(b).
Furthermore, it is clear that chattel paper can serve as collateral, § 7-9-105 (1)(c); that CCEC is a secured party, whether it has a security interest in the chattel paper or is one to whom chattel paper has been sold, § 7-9-105 (1)(i); and, that Toomey is a debtor of CCEC either as one who owes "other performance" or as a seller of chattel paper. § 7-9-105 (1)(d).
Thus, in John Deere Co. v. Neal, Tex.Civ.App., 544 S.W.2d 514
(1976), where the vendor of farming equipment assigned an installment contract-security agreement such as the one at bar to the manufacturer, the Texas Court of Civil Appeals held art. 9 applied to the transaction in determining the rights and liabilities of the parties involved.
Another illustration of the above reasoning is found inNorton v. National Bank of Commerce, 240 Ark. 131,398 S.W.2d 538 (1966). There, an automobile dealer sold chattel paper to a bank containing a provision that if the vendee of the car defaulted the dealer would repurchase the automobile for the amount then due thereon. Holding that the obligation to purchase the automobile made the dealer the debtor of the bank as one who owes "other performance of the obligation secured", § 7-9-105 (1)(d), the court applied the provisions of art. 9.
In reaching this conclusion the court in Norton relied on the Official Comment to § 7-9-105, which provides in pertinent part:
 A dealer sells a tractor to a farmer on conditional sales contract. The conditional sales contract is a "security agreement", the farmer is the "debtor", the dealer is the "secured party" and the tractor is the type of "collateral" defined in Section 7-9-109 as "equipment". But now the dealer transfers the contract to his bank, either by outright sale or to secure a loan. Since the conditional sales contract is a security agreement relating to specific equipment the conditional sales contract is now the type of collateral called "chattel paper". In this transaction between the dealer and his bank, the bank is the "secured party", the dealer is the "debtor", and the farmer is the "account debtor". (Emphasis supplied.)
Suffice it to say that on the strength of the above cited cases and comment, it is *Page 1159 
clear to this court that Toomey is correct in contending art. 9 governs this transaction.
As indicated, CCEC also argues that art. 3 is applicable if the UCC is to control.
We cannot agree. In so ruling we see no need to decide whether the writing in question is a negotiable instrument. We instead turn to § 7-3-103 of art. 3 which clearly states "the provisions of this article are subject to the provisions of the article on . . . secured transactions (article 9)." (Emphasis supplied.)
Thus, even though we are not holding a conflict between the two articles does in fact exist, it has been held that where a conflict does arise, art. 3, being general, becomes subject to art. 9. Jefferson v. Mitchell Select Furniture Co., 56 Ala. App. 259, 321 So.2d 216 (1975).
In accord is John Deere Co. v. Neal, supra, where the court addressed contentions similar to those of CCEC and specifically concluded that the rights and liabilities of the vendee of goods and the assignee of chattel paper were governed by art. 9. We see nothing in the case at bar, where the dispute is between the assignor/seller and the assignee/buyer of chattel paper, which calls for a different rule. See, Majors FurnitureMart, Inc. v. Castle Credit Corp., 602 F.2d 538 (3rd Cir. 1979).
Neither do we find convincing CCEC's argument that § 7-9-207 does not affect pre-code law as it might have applied to this case.
Under § 7-1-103, prior existing law supplements the various code sections "unless displaced by the particular provisions of this title." It is clear from this that if the particular code provisions do displace prior law, the code prevails.
Suffice it to say that this is such a case. Under Alabama's prior law, the creditor apparently owed no duty to the surety and was not liable if its negligence impaired the right of the surety to collect. Section 7-9-207 clearly imposes such duties, and it therefore prevails in this case.
Thus, under § 7-9-207 (1), the question ultimately becomes whether, under these facts, the giving of notice within six months of the death of the vendee was required to discharge CCEC's duty of reasonable care and was also a necessary step in preserving Toomey's right against Mr. Bohannon's estate. If it was, and if Toomey did not waive the right to such notice, then a genuine issue of material fact remained to be resolved, and summary judgment was not proper. See, Rule 56 (e), ARCP; FirstNational Bank v. Culberson, Ala., 342 So.2d 347 (1977).
In deciding this issue, we note that under the assignment or sale of the chattel paper, payments were to be made directly to CCEC. Toomey was to have no further dealings with Mr. Bohannon and could only learn of a default when CCEC notified it thereof and demanded repurchase. Toomey was then obligated to pay CCEC the outstanding indebtedness. CCEC thus enjoyed all the benefits afforded a secured party by the UCC and few of the risks as the burden of proceeding against the defaulting vendee for ultimate recovery was placed upon Toomey, not CCEC.
We thus conclude that under these facts, where CCEC indisputably had knowledge of Mr. Bohannon's death, the simple giving of notice that the defaulting debtor had died so that Toomey could act to preserve its rights would be necessary to fulfill the mandate of § 7-9-207 (1). See, Congress FinancialCorp. v. Sterling Coin-Op Machinery Corp., 456 F.2d 451 (3rd Cir. 1972).
Finally, we do not read the above quoted provision of the agreement dealing with Toomey's right to receive notice as either applying to these particular facts or as constituting a waiver if it does apply.
Assuming without deciding that the provision could be read as an attempted waiver, we note that § 7-1-102 (3) expressly prohibits any agreement wherein one party disclaims its obligations of reasonableness and care. That section reads: *Page 1160 
 The effect of provisions of this title may be varied by agreement, except as otherwise provided in this title and except that the obligations of good faith, diligence, reasonableness and care prescribed by this title may not be disclaimed by agreement but the parties may by agreement determine the standards by which the performance of such obligations is to be measured if such standards are not manifestly unreasonable.
Thus, if we were to give the agreement the construction urged by CCEC, its provisions would not permissibly undertake to define a standard of reasonable care, but would constitute an "exculpation from liability for lack of reasonable care in performing a duty which may in fact have been undertaken. Such an exculpation is prohibited by § 1-102 (3)." [§ 7-1-102 (3) in Alabama.] Congress Financial Corp., supra, 456 F.2d at 455.
In summation, the affidavits of the parties put in issue the giving of notice by CCEC of the death of Mr. Bohannon. This was clearly a material fact. Thus, summary judgment was not appropriate.
This case is due to be reversed and remanded.
REVERSED AND REMANDED.
WRIGHT, P.J. and BRADLEY, J., concur.