This is a divorce decree modification case.
The parties to this appeal were divorced on February 28, 1979. The divorce decree incorporated an agreement of the parties. One of the provisions of the agreed-to decree placed the two children of the parties in the custody of the mother and required the father to pay child support. Another provision required the husband to pay to the wife $300 per month for a period of one hundred forty-four months.
In September 1980 the wife filed a motion seeking a contempt citation against her former husband for his failure to return her minor son to her and his failure to make the alimony payments required by the divorce decree. The former husband replied by saying that the former wife had abandoned the minor son and had otherwise neglected him and was, therefore, not entitled to his custody. The former husband also said that the former wife had voluntarily agreed to a reduction of the alimony in gross and that he therefore did not owe the amount sought by her. The former husband then sought a modification of the divorce decree by asking that custody of his son be awarded to him and that the alimony provision of the divorce decree be modified to terminate the payments. He claimed that the alimony payments were to be applied to the house payments during the time the former wife lived in the house. However, she did not live in the marital home and it has since been sold.
After a hearing the trial court modified the former decree by awarding custody of the son to the father and by terminating the alimony payments because "the provisions of alimony contained in the original Decree of February 28, 1979, was for the purpose of defraying the house payment on property belonging jointly to the parties." The former wife appeals from these aspects of the modification decree. *Page 478 
The former wife argues in brief that the provision in the agreement made a part of the divorce decree awarding her $300 a month for one hundred forty-four months must be treated as an alimony in gross award. If so treated, the provision cannot be modified after the expiration of thirty days.
It appears from the provision of the decree in question that the alimony award is in gross. Crawley v. Crawley,358 So.2d 456 (Ala.Civ.App. 1978). The award is for a certain amount each month for a specific number of months. The total amount of the award can be easily ascertained. Moreover, there is no provision for shortening the payment period, i.e. there is no provision for the payments to cease upon death or remarriage. The trial court concluded, however, that the alimony award was for the purpose of enabling the wife to make the mortgage payments on the marital home which was jointly owned by the parties.
The provision of the divorce decree relating to the marital house is as follows:
 "The Defendant shall retain possession of the jointly-owned homeplace until she remarries or as long as she desires, whichever comes first. The Defendant shall be responsible for the house notes, taxes, maintenance and insurance on said homeplace, during the period of her residency. In the event the Defendant elects to move from the jointly-owned homeplace or remarries, whichever comes first, the Plaintiff agrees to pay for all house notes, taxes, maintenance and insurance on the jointly-owned homeplace. In the event that the homeplace is sold, the equity and utility deposits or refunds shall be divided equally between the parties."
The evidence is undisputed that the former wife moved out of the marital house the day after the divorce became final. Under the clear terms of the agreement, the former husband then was required to make the mortgage payments and pay the other expenses of maintaining the house. The evidence also shows that the house was subsequently sold.
There is absolutely nothing in the agreement in question that remotely suggests that the alimony award to the former wife was to be used to pay the mortgage expenses on the marital house. Former husband argues, however, that he and his former wife had an oral agreement that the payments were to be so used. The wife strongly disputes such contention. She says. the written agreement incorporated into the divorce decree accurately reflects the agreement of the parties.
Even though such an oral agreement might have been made, it could not now change the terms of the written agreement made by the parties and incorporated into the divorce decree.
The general rule of contract law is that when the parties reduce their agreements to writing, the writing is the sole expositor of the transaction and the intention of the parties, in the absence of mistake, fraud or ambiguity. Gunnels v.Jimmerson, 331 So.2d 247 (Ala. 1976). There is no contention in the instant case that fraud or mistake infected the written agreement or that it is ambiguous. Also, it is settled that where a written contract exists between the parties, parol evidence cannot be received to explain, contradict, vary, add to or subtract from its terms. Lightsey v. First National Bank,273 Ala. 416, 142 So.2d 681 (1962).
The alimony provision in the divorce decree is an alimony in gross award and as such cannot now be modified. This aspect of the trial court's judgment is reversed and the cause remanded for ascertainment of arrearage and the imposition of judgment for that amount in favor of the former wife.
Appellant's other issue is that the trial court erred by changing custody of the minor son from the mother to the father. In support of her contention she argues that the record is devoid of evidence supportive of a modification of the child custody provisions of the divorce decree. We disagree. *Page 479 
The paramount consideration on petition for modification of custody provisions of a divorce decree is welfare of the minor child. Alsbrooks v. Barnes, 251 Ala. 684, 39 So.2d 234 (1949). The party seeking to modify a child custody provision of a divorce decree has the burden of proving a material change in circumstances since the last custody decree which has so affected the welfare and best interests of the child as to require a change in custody. Hallford v. Hallford,390 So.2d 295 (Ala.Civ.App. 1980). Also, the judgment of the trial court is presumed correct and such presumption cannot be rebutted except by a showing that the decision is plainly wrong. Fieldv. Field, 382 So.2d 1132 (Ala.Civ.App. 1980). We conclude that the judgment is not plainly wrong.
In September 1979, after the son had returned from visiting the father, the father told the mother that the son wanted to live with him, and the mother agreed to let the son go live with his father for one school semester on a trial basis. The son had told his mother that he wanted to live with his father. In October 1979 the mother asked the father to return the child and he refused. The mother had the child just before Christmas for a few hours but she had not had him from then until the hearing in June 1980.
At the time of the hearing in June 1980 the mother was working for the police department in Gulfport, Mississippi. The other child was with her and they had been renting a room from Mr. and Mrs. Busby. The mother testified that she had recently rented a house for them to live in.
The evidence shows that while the mother was moving her belongings to Mississippi she left the two children with a friend, Alice Woodall, until the father could pick them up. The mother stated that she called the father and explained that she was moving and requested that he keep the children for a few days and until she could complete her move. The father denied that the mother told him that he was to get the children from Mrs. Woodall and keep them until the mother could complete her moving. The father did, however, get the children for a few days and then the children lived with their mother for about a month. They then went to live with their father for his month's visitation. The children returned to their mother for the month of August. After visiting their father again for several days in September 1979, they returned to their mother's. Shortly thereafter, the son returned to live with his father and has been with him ever since.
The trial judge stated that he had received home evaluation reports from the Florida and Mississippi welfare departments and they showed that the mother and father were good and proper people.
As noted above, the evidence is in conflict on the issue of abandonment and whether the mother agreed for the father to have custody of the son on a temporary basis. In Reaves v.Reaves, 399 So.2d 311 (Ala.Civ.App. 1981), we said:
 "We note the mother's contention that she relinquished custody only temporarily when the child went to live with her father and that the parties agreed she would take the child back when she finished nursing school. The father denies that contention. If the trial court had found that the parties had agreed the father would take only temporary custody of the child, a different decision might have been mandated. The trial court, however, apparently was not persuaded by the mother's argument.
 "Put another way, there was a conflict in the evidence, the mother contending that she gave temporary custody of the child to the father, with the understanding that she would regain custody at such time as she completed nursing school. The father stated that there was no such understanding that he was to have only temporary custody. The trial court resolved the conflict and this court cannot substitute its judgment for that of the trial court. Sutton v. Sutton, 55 Ala. App. 254, 314 So.2d 707
(1975)."
We therefore conclude that we should not substitute our judgment for the trial court's judgment on the issue of child custody. *Page 480 
That aspect of the trial court's judgment modifying the child custody provision of the original divorce decree by placing the custody of the son with the father is affirmed.
Appellant's request for an attorney's fee on appeal is granted, and she is awarded $350 for such a fee.
AFFIRMED IN PART, REVERSED IN PART AND REMANDED WITH INSTRUCTIONS.
WRIGHT, P.J., and HOLMES, J., concur.