117 So.2d 348

**HARTFORD FIRE INSURANCE COMPANY**

v.

**Phil SHAPIRO, Jr.**

6 Div. 180.

Supreme Court of Alabama.

Jan. 14, 1960.

Tweedy & Beech, Jasper, for appellant.

T. K. Selman and Thomas Leon Beaird, Jasper, for appellee.

LIVINGSTON, Chief Justice.

This appeal is from a judgment of the Circuit Court of Walker County, Alabama,

awarding the appellee, Phil Shapiro, Jr., plaintiff in the court below, $1,350 damages for the breach of an oral contract to insure, as claimed in Count 2 and 3, or of insurance, as claimed in Count 4 of the complaint.

A few days prior to December 18, 1954, plaintiff's father, Phil Shapiro, Sr., asked W. Douglas Leake, Jr., agent of appellant, defendant in the court below, to contact his son, appellee, and sell appellee some insurance covering a new automobile which appellee had just purchased. The agent did so, and a few days later, on or about December 18, 1954, wrote and delivered to appellee a policy of insurance covering said automobile.

A bill for one year's premium on said insurance, in the amount of $127, was rendered appellee on January 1, 1955, and paid by him, by check, dated January 3, 1955.

Item 3 of the policy, showing the coverages contained in it, is as follows:

| Coverages | | | Limits of liability | Rate Premium | |
|---|---|---|---|---|---|
| H A R T F O R D | A C C I D E N T | A—Bodily Injury Liability | 25 thousand dollars each person | XXXX | $68.00 |
| | | | 50 thousand dollars each accident | XXXX | |
| | | B—Property Damage Liability | 5 thousand dollars each accident | XXXX | 32.00 |
| | | C—Medical Payments | $2000.00 each person | XXXX | 10.00 |
| H A R T F O R D | F I R E | D—Comprehensive Loss of or Damage to the Automobile, except by collision but including Fire, Theft and windstorm | Insert Amount or Actual Cash Value $ Actual Cash Value | | 17.00 |
| | | E—Collision or Upset | Actual Cash Value less $——deductible | XXXX | |
| | | F—Fire, Lightning and Transportation | $ | | |
| | | G—Theft | $ | | |
| | | H—Windstorm, earthquake Explosion, Hail or Water | $ | | |
| | | I—Combined Additional coverage | | | |
| | | J—Towing and Labor Costs | $10 for each disablement | XXXX | |

Premium for and Form Numbers of Endorsements attached to Policy

Total Premium     $127.00

In March 1955, appellee reported to appellant a loss occasioned by theft of his hubcaps, and this claim was paid.

On May 19, 1955, appellee drove his car off the highway and it was badly damaged. He then discovered that the policy of insurance carried by him did not cover collision and upset, and sued upon his alleged oral contract to insure, as set out in Counts 2 and 3 of the complaint, or of insurance as set out in Count 4·of the complaint.

On the trial, evidence of the one conversation between plaintiff and defendant's agent was admitted over objection of counsel that such negotiations were merged into the written contract. The written contract was not introduced until after testimony concerning these conversations was already in the record.

Plaintiff's testimony is that he stated he wanted "full coverage." Agent Leake testified that plaintiff balked at the high premium on collision and upset. After the policy was introduced, the following occurred:

"Mr. Tweedy: I want to move the Court to exclude all testimony of Phil Shapiro, Jr., with reference to any alleged conversations he had with Doug Leake, Jr., with reference to what was to be included or written in the policy for the plaintiff in this case. I am making this motion separately and severally to each conversation which he is alleged to have had with the said agent Leake before issuance of this policy.

"The Court: Motion overruled.

"Mr. Tweedy: We except.

"Mr. Tweedy: I want to make a motion to exclude the statements of Phil Shapiro, Jr., with reference to the conversations or alleged agreements which he testified he had with Agent Leake about two days before he purchased the car and which conversations dealt with the purchasing of the insurance involved in this case and which

was the only conversation he had with Agent Leake with reference to the purchase of this said insurance before said policy was issued. My motion in each of these matters being based on the proposition that any oral agreement or any conversation or stipulation had before the issuance of this policy was merged into the subsequent issuance of the policy and into the policy contract later issued and which has been identified as Defendant's Exhibit 1 in this case.

"The Court: Motion overruled.

"Mr. Tweedy: We except."

These rulings raise the question of whether there was, as a matter of law, an oral agreement, valid at the time of the loss complained of, which the jury could consider in arriving at their verdict. The same questions are raised by appellant's written request for the general charge and by its timely motion for a new trial, which the trial court overruled. We are of the opinion and hold that the trial court erred in refusing to exclude the above evidence, and also, in refusing appellant's written request for the general charge, and in deny-·ing the motion for a new trial.

■ A valid contract to insure or of insurance can be effected by parol. Mobile Marine Dock & Mutual Ins. Co. v. McMillan, 31 Ala. 711; Insurance Co. of North America v. Thornton, 130 Ala. 222, 30 So. 614, 55 L.R.A. 547; Cherokee Life Ins. Co. v. Brannum, 203 Ala. 145, 82 So. 175; Liverpool & London & Globe Ins. Co. v. McCree, 210 Ala. 559, 98 So. 880; Globe & Rutgers Fire Ins. Co. of New York v. Eureka Sawmill Co., 227 Ala. 667, 151 So. 827; Liberty National Life Ins. Co. v. Staggs, 242 Ala. 363, 6 So.2d 432; Resolute Fire Ins. Co. v. O'Rear, 35 Ala.App. 398, 47 So.2d 425. Such a contract is without the Statute of Frauds. Commercial Fire Ins. Co. v. Morris, 105 Ala. 498, 505, 18 So. 34; Springfield Fire & Marine Ins. Co. v. DeJarnett, 111 Ala. 248, 259, 19 So. 995. An agent, if he can issue policy contracts,

can also bind his company by parol. Cherokee Life Ins. Co. v. Brannum, supra.

Sec. 75, Title 28, Code of Alabama 1940, reads, in pertinent part, as follows:

"No life nor any other insurance company nor any agent thereof shall make any contract of insurance or agreement as to policy contract other than is plainly expressed in the policy issued thereon, * * *."

This statute does not prohibit the making of a valid contract of insurance by parol because such are not "policies." Sun Ins. Office of London v. Mitchell, 186 Ala. 420, 65 So. 143. Nor does it prevent the negotiation of an enforcible contract to insure. United Burial & Ins. Co. v. Collier, 24 Ala. App. 546, 139 So. 104, certiorari denied 224 Ala. 57, 139 So. 106.

First, as regards the contract of insurance: It is familiar law that a contract of insurance is essentially like all other contracts, and governed by general rules of contract. North River Ins. Co. v. McKenzie, 261 Ala. 353, 74 So.2d 599, 51 A.L.R.2d 687.

Where there exists between the parties a written contract, the authorities are in agreement that parol evidence cannot be received to explain, contradict, vary, add to, or subtract from its terms. Bozeman v. J. B. Colt Co., 19 Ala.App. 126, 95 So. 588; Miles v. Sledge, 157 Ala. 528, 47 So. 595; W. T. Rawleigh Co. v. Phillips, 232 Ala. 124, 167 So. 271; Worthington v. Davis, 208 Ala. 600, 609, 94 So. 806; Town of Brewton v. Glass, 116 Ala. 629, 22 So. 916. The statement of this rule employed in insurance cases, is that all parol negotiations, understandings and agreements are merged into the written policy. Jefferson Life & Casualty Co. v. Williams, 37 Ala.App. 718, 76 So.2d 185.

The plaintiff concedes that this is the law, but insists that the parol evidence, or merger rule, should not apply in this case on the ground that the agreement concerning collision and upset insurance is collateral, separate and distinct from the agreements embodied in the policy. Such an exception to the parol or extrinsic evidence rule is recognized in Alabama, as evidenced by Woodall v. Malone-Harrison Motor Co., 219 Ala. 366, 122 So. 357, 358, where the court said:

"When a written instrument shows that it contains the obligation of both parties to it, that alone is evidence of the terms of the contract. It is only when the instrument shows that it does not contain all the terms of the contract as to both parties to it that evidence may be offered to show further stipulation than those expressed, *unless it is proposed to prove an engagement independent of and collateral to the matters embraced in such written instrument. * * *"* (Emphasis supplied.)

The question presented here is whether or not the oral contract is sufficiently separate and distinct from the written one as to bring it within the exception stated.

Various courts have evolved tests to determine this separateness. Alabama has not been presented with the precise question, but has stated that the oral agreement may be considered collateral, even though the subject matter of the two contracts is the same. Alabama Power Company v. Pierre, 236 Ala. 521, 183 So. 665.

The majority of American courts presented with this problem agree that:

"* * * (5) the test as to whether the alleged parol agreement is sufficiently distinct and separate so that the parol-evidence rule does not preclude its proof is primarily whether the parties intended the written contract to cover all of the matters embraced in their prior or contemporaneous negotiations, including that part omitted from the writing; (6) in determining this intent, the court should

consider the 'closeness' of the alleged parol agreement to the writing, the surrounding circumstances as well as the written contract itself, and what parties ordinarily might be expected to do under those circumstances as to inclusion of particular matters in the writing. * * *" 70 A.L.R. 770.

In a leading case, Mitchell v. Lath, 247 N.Y. 377, 160 N.E. 646, 647, 68 A.L.R. 239, reargument denied 248 N.Y. 526, 162 N.E. 511, Justice Andrews said:

"* * * Under our decisions before such an oral agreement as the present is received to vary the written contract, at least three conditions must exist: (1) The agreement must in form be a collateral one; (2) it must not contradict express or implied provisions of the written contract; (3) it must be one that parties would not ordinarily be expected to embody in the writing, * * *."

Gianni v. R. Russel & Co., Inc., 281 Pa. 320, 126 A. 791, 792, reaches the following solution:

" * * * This can be answered by comparing the two, and determining whether parties, situated as were the ones to the contract, would naturally and normally include the one in the other if it were made. If they relate to the same subject-matter, and are so interrelated that both would be executed at the same time and in the same contract, the scope of the subsidiary agreement must be taken to be covered by the writing. This question must be determined by the court."

Professor Wigmore, in IX Wigmore on Evidence, 3rd Ed. 98, § 2430, analyzes the problem as follows:

"(2) This intent must be sought where always intent must be sought * * *, namely, in the *conduct and language* of the parties and the *surrounding* circumstances. The document alone will not suffice. What it was intended to cover cannot be known till we know what there was to cover. The question being whether certain subjects of negotiation were intended to be covered, we must compare the writing and the negotiations before we can determine whether they were in fact covered. Thus the apparent paradox is committed of receiving proof of certain negotiations in order to determine whether to exclude them; and this doubtless has sometimes seemed to lower the rule to a quibble. But the paradox is apparent only. The explanation is that these alleged negotiations are received only provisionally. Although in form the witnesses may be allowed to recite the facts, yet in truth the facts will be afterwards treated as immaterial and legally void, if the rule is held applicable. There is a preliminary question for the judge to decide as to the intent of the parties, and upon this he hears evidence on both sides; his decision here, *pro* or *con,* concerns merely this question preliminary to the ruling of law. If he decides that the transaction was covered by the writing, he does not decide that the excluded negotiations did not take place, but merely that *if* they did take place they are nevertheless legally immaterial. If he decides that the transaction was not intended to be covered by the writing, he does not decide that the negotiations did take place, but merely that *if* they did, they are legally effective, and he then leaves to the jury the determination of fact whether they did take place."

Considering the situation in the light of the principles above set forth, it must be concluded that: (1) The written contract had a space provided for collision and upset coverage, and a space provided for the annual premium charge made therefor, and these spaces were left blank, and the inference of the written contract is that the parties did not intend to contract for such insurance. (2) Insurance policies are

notoriously complete, and therefore presumably contain the entire agreement of the parties thereto. (3) The facts clearly indicate that the parties expected the policy to embody their complete agreement, and it is customary for persons purchasing and selling insurance to so expect.

There can be no other conclusion but that the oral agreement for collision and upset coverage was *not* a separate and distinct, or collateral one. It is closely bound to the written one, and no doubt intended to be made part and parcel thereto.

As regards the counts charging breach of an oral contract *to insure,* the general rule is the same as that regarding any other negotiations or agreements culminating in the issuance of a policy, i. e., that they are merged into the policy. City Mortgage & Discount Co. v. Palatine Ins. Co., Ltd., 226 Ala. 179, 145 So. 490; Town of Brewton v. Glass, supra; Globe & Rutgers Fire Ins. Co. v. Pappas, 219 Ala. 332, 122 So. 346; Tutton v. Liverpool & London & Globe Ins. Co., 237 Ala. 230, 186 So. 551; Jefferson Life & Casualty Co. v. Williams, 37 Ala.App. 718, 76 So.2d 185. The majority of American courts hold that if the policy is accepted by the insured, he is bound thereby, even though the policy does not correspond to the preliminary negotiations. 44 C.J.S. Insurance § 266, pp. 1071, 1072; 44 C.J.S. Insurance § 229, p. 953; 1 Appleman, Insurance Law and Practice 175, and cases cited therein; Fort Valley Coca-Cola Bottling Co. v. Lumbermen's Mutual Casualty Co., 69 Ga.App. 120, 24 S.E.2d 846; 12 Appleman, Insurance Law and Practice 220, § 7155.

This same rule would seem to obtain in Alabama, since our precedents provide that an insured is presumed to be familiar with the provisions of his policy. Metropolitan Life Ins. Co. v. Goodman, 10 Ala.App. 446, 65 So. 449; Georgia Home Ins. Co. v. Warten, 113 Ala. 479, 22 So.

288; Mutual Life Ins. Co. of New York v. Barrett, 215 Ala. 142, 110 So. 275; Vredenburgh v. Liberty Nat. Life Ins. Co., 246 Ala. 251, 20 So.2d 207.

Here, the insured could read and write, having attended college for a year. The policy had been in effect for five months, under which a claim had been made and payment duly received by insured.

It was said in Floars v. Aetna Life Ins. Co., 144 N.C. 232, 56 S.E. 915, 916:

"* * * it is also accepted doctrine that when the parties have bargained together touching a contract of insurance and reached an agreement, and in carrying out, or in the effort to carry out, the agreement, a formal written policy is delivered and accepted, the written policy, while it remains unaltered, will constitute the contract between the parties, and all prior parol agreements will be merged in the written instrument; * * *"

This doctrine is expressed in Mowles v. Boston Ins. Co., 226 Mass. 426, 115 N.E. 666, 667, as follows:

"The tender of that instrument by the defendant through its agent Wellington could mean nothing else than that the defendant thereby undertook to extinguish its previous obligations and present that instrument to the plaintiff as its sole contract."

In view of the conclusions we have reached, the trial court erred in denying defendant's motion to exclude evidence of the oral understanding, in refusing the request for the general charge and denying the motion for a new trial, and the case should be, and is herewith, reversed.

Reversed and remanded.

SIMPSON, GOODWYN and COLEMAN, JJ., concur.