146 So.2d 323

**Doyal A. JOHNS**

v.

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY.**

**7 Div. 668.**

Court of Appeals of Alabama.

Oct. 23, 1962.

Robt. H. King, Gadsden, for appellant.

Dortch, Allen & Meighan, Gadsden, for appellee.

JOHNSON, Judge.

Appellant, Doyal A. Johns, brought suit for indemnification of his son's funeral expenses from appellee, State Farm Mutual Automobile Insurance Company, hereinafter referred to as the Company. Appellant sued on an automobile insurance policy issued by the Company on the Ford automobile owned by him.

By agreement the jury demand of the appellant was withdrawn, and the case was submitted to the trial judge alone on Count Two of the appellant's amended complaint and the Company's plea of the general issue in short with plaintiff's consent. The case was submitted on an agreed statement of facts and exhibits. The first trial resulted in a judgment for the appellant in the amount of $452.42 damages, together with the costs of the suit. The Company's motion for a new trial was granted. On resubmission of the case to the same trial

616

judge, he rendered judgment for the Company. Appellant's motion for a new trial was overruled. Appellant appeals from the judgment for the Company.

We will briefly state the facts surrounding the fatal accident from which this case resulted. The Company issued appellant a policy of automobile liability and medical payments insurance on his Ford automobile. Among other things, the policy provided for coverage of expenses for funeral services for the named insured and each relative who sustains bodily injury, caused by accident, while occupying or being struck by the automobile (meaning the insured automobile) or a "non-owned" automobile or certain other land motor vehicles.

It is agreed between the parties hereto that Tommy Johns, the son of the appellant, was killed in an automobile accident while riding in a Plymouth automobile owned by Eleanor Johns, wife of the appellant, and driven by King Wiggins, son of Eleanor Johns; all were members of the insured's household. Funeral expenses (not including a monument) of $952.42 were incurred. Five hundred dollars was admittedly collected under a policy of insurance carried by Eleanor Johns on the Plymouth automobile involved in the fatal accident. The original judgment in this cause awarded $452.42 to the appellant for the funeral expenses in excess of $500.00. The two policies were introduced as evidence and included in the record. Henceforth, reference to the policy in this opinion means the one carried by the appellant on his Ford automobile and on which he is here seeking to recover.

In a property insurance policy, the insurer contracts to indemnify the insured for loss caused by the happening of specified contingencies. In the policy, these promises are designated "coverages" which are clauses of the various parts labelled "insuring agreements". The insurer limits his undertaking by stating within the policy that this insurance does not apply to specified "exclusions". The terminology of the policy is derived from custom, case law, statutes and that part of the insurance contract labelled "definitions". Embraced in the policy and pertinent to its construction are the following definitions:

"1. Named Insured—means the individual so designated in the declarations and also *includes his spouse, if a resident of the same household.*

"2. Insured—under coverages A, B, C and M, the unqualified word 'insured' includes (1) the named insured, and also includes (2) *his relatives,* (3) any other person while using the automobile, provided the actual use of the automobile is with the permission of the named insured, and (4) under coverages A and B any person or organization legally responsible for the use thereof by an insured as defined under the three subsections above.

"3. Relative—means a relative of the named insured who is a *resident of the same household.*

"4. Automobile—means the private passenger automobile or trailer described in the declarations and *includes a temporary substitute automobile and a newly acquired automobile,* and under coverages A, B, C and M a trailer owned by the named insured.

"5. Temporary Substitute Automobile—means an automobile *not owned by the named insured* while temporarily used as a substitute for the described automobile when withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction.

"6. Non-Owned Automobile—under coverages A, B, C and M means an automobile or trailer *not owned by the named insured or any relative,* other than a temporary substitute automobile.

"7. Bodily Injury—means bodily injury, sickness or disease *including death* at any time resulting therefrom." (Emphasis and numbers are ours in preceding definitions.)

The appellant insists that the exclusions i(2) and i(3) are ambiguous and, therefore, should be construed in favor of the insured and against the insurer. We agree with the appellant's contention in principle but do not concur in the contention that such exclusions are ambiguous. The pertinent part of the exclusions is as follows: "This insurance does not apply under: * * * (i) Coverages C and M, to bodily injury to any person: * * * (2) while occupying or through being struck by any automobile, land motor vehicle or trailer if such vehicle is owned by named insured or a relative and is not included in the definition of 'automobile'; (3) other than the named insured and a relative while occupying any vehicle not insured under Insuring Agreements I or II;". Endeavoring to recover under the policy, the appellant places emphasis on exclusion i(3), but by the terms of the policy, the insured is properly notified that the insurer contracts no liability by the exclusion provisions because they are labelled "exclusions" and limit liability.

By Insuring Agreement I the Company promises to indemnify for loss caused by accidents involving "the automobile". From the definitions, it is plain that the automobile here referred to is the Ford automobile. Coverage C—Medical Payments extends coverage for funeral expenses to other land motor vehicles, but it is clear to us that exclusion i(2) limits this coverage to other vehicles not owned by the named insured or a relative. We, therefore, conclude that the insured can claim nothing under Insuring Agreement I.

The appellant claims that the Plymouth is a non-owned automobile, and, therefore, he is entitled to be indemnified under Insuring Agreement II. Applying the evidence of the ownership of the Plymouth to the definitions makes it obvious that it is not a non-owned automobile. The definitions in the policy declare that "named insured" includes the spouse of the individual designated as the named insured if she is a resident of the same household. Eleanor Johns is the wife of the designated insured, Doyal

A. Johns, and resides with him in the same household; therefore, Eleanor Johns is a "named insured". "Non-owned automobile" is defined as an automobile not owned by the named insured or any relative, other than a temporary substitute automobile. The undisputed facts of this case are that Eleanor Johns had owned and had possessed the Plymouth for at least fifteen months and that it was not a temporary substitute automobile. Therefore, the Company is not liable under Insuring Agreement II.

The same or similar propositions with which we are confronted are discussed in the following cases: Mallinger v. State Farm Mut. Auto. Ins. Co. (Iowa), 111 N.W. 2d 647; Moore v. State Farm Mut. Auto. Ins. Co., 239 Miss. 130, 121 So.2d 125; Morton v. Travelers Indemnity Co., 121 Cal. App.2d Supp. 855, 263 P.2d 337.

The appellee was the defendant in the Iowa and Mississippi cases. In the Mallinger case, supra, the insured was killed while operating his own farm-type tractor on a public highway. The Iowa Court held that the exclusion which corresponds to i(2) in the case before us limited the risk which would otherwise have been assumed by Coverage C. Coverage C, which is substantially the same in the Company's three policies, provides for medical payments due to injury of insured or a relative while riding in the insured automobile or other vehicles; but the exclusion denies this coverage if that other vehicle is owned by the insured or a relative. The following apropos excerpt from the Iowa opinion construes exclusions (h) (2) and (h) (3), which correspond to exclusions i(2) and i(3) in the policy before us:

"Exclusion clause (h) (2), supra, while limiting the coverage for medical payments under coverage C is not difficult to understand and still leaves substantial medical benefits. Exclusion clause (h) (3) immediately following says that no one other than the named insured and a 'relative' is covered by coverage C while occupying any vehi-

cle not insured under the insuring agreements I and II. It has no bearing on the situation before us. It does not limit the right of the insured himself to recover, as does (h) (2). It leaves coverage C in effect as to any person injured while occupying or being struck by the insured automobile, or under certain conditions in the use of a non-owned automobile by the insured or a relative as defined in Insuring Agreement II. It is also limited to 'occupying', and does not exclude 'being struck by'. So only the named insured or a relative may recover medical payments for injuries sustained while occupying a farm tractor on the public highways, because it is not covered by Insuring Agreements I and II; and the right of the insured is limited so far as land motor vehicles is concerned to those he or a relative did not own."

In the Moore case the insured was injured while driving one of his employer's ten trucks which were regularly supplied him in connection with his employment. In denying recovery, the Mississippi court held that the exclusion stating that "this policy does not apply * * * to bodily injury: * * * sustained by the named insured * * * while occupying an automobile * * * furnished for the regular use of * * * the named insured * * *, other than an automobile defined herein as an 'owned automobile' * * *" limited the risk which otherwise would have been assumed by Coverage C.

In the Morton case, supra, the insured, Morton, was injured while operating his wife's Studebaker automobile and sought to recover under a policy on his own Chevrolet automobile. The court emphasized the common sense reason in denying Morton's claim by asserting:

"Since assured paid but one premium for coverage on his Chevrolet, it is not unreasonable to expect that similar coverage on other cars would be conditioned to such other cars as were not owned by insured or his household."

We have carefully studied the policy in its entirety and we find that the insurance company clearly assumed no liability thereunder for the claims of the appellant.

Judgment affirmed.