210 So.2d 709

**EMPLOYERS CASUALTY COMPANY**

**v.**

**Rufus W. HEAD.**

**5 Div. 686.**

Court of Appeals of Alabama.

April 16, 1968.

Lawrence F. Gerald, Jr., Clanton, for appellant.

Morgan Reynolds and Reynolds & Reynolds, Clanton, for appellee.

PRICE, Presiding Judge.

In the court below the plaintiff recovered a judgment in the sum of $942.90. The cause was tried by the court without a jury.

This is the second appeal of this cause of action. Employers Casualty Company v. Head, 42 Ala.App. 644, 176 So.2d 51.

Prior to the second trial the plaintiff, Head, amended the complaint by adding Counts A and B, claiming damages for breach of an oral contract of insurance in Count A, and in Count B for breach of an executory contract to insure the plaintiff against loss for medical services resulting from bodily injuries sustained while occupying a state owned automobile.

The original complaint was a suit to recover medical payments on a family automobile liability policy issued to Rufus W. Head by appellant.

The policy, plaintiff's exhibit 1, described and covered a 1958 Ford automobile owned by insured. The pertinent parts of the policy are as follows:

"Part II—Expenses for medical services.

"Coverage C—Medical Payments

To pay all reasonable expenses incurred within one year from the date of accident for necessary medical, surgical, X-ray and dental services, including prosthetic devices and necessary ambulance, hospital, professional nursing and funeral services.

"Division 1. To or for the named insured and each relative who sustains bodily injury, sickness or disease, including death resulting therefrom, hereinafter called "bodily injury," caused by accident while occupying or through being struck by an automobile; * * *:

*   *   *   *   *   * .

"Exclusions. This policy does not apply under Part II to bodily injury.

*   *   *   *   *   *

"(b) sustained by the named Insured or a relative (i) while occupying an automobile owned by or furnished for the regular use of either the named insured or any relative, other than an automobile defined herein as an 'owned automobile,' or * * *."

It was stipulated that the policy was in full force and effect on the date of the alleged injury; that the insured sustained injuries as the result of an accident; that he incurred medical and hospital expenses in the sum of $942.90, which were reasonable charges for the services furnished and that proof of loss was made by the plaintiff to the defendant or his agent.

The plaintiff testified that in November of 1961 he was employed by the State of Alabama as a highway patrolman with the Department of Public Safety. There was assigned to him for his use as such patrolman a 1961 Dodge automobile. He went to the J. C. Page Company for the purpose of purchasing a policy of insurance on his Ford automobile. He knew Jerry Bodden and Mrs. Peggy Kane and discussed the matter with both of them. He told them that he drove highway patrol automobiles furnished by the State and asked whether he would be covered under the medical benefits of the policy if he were injured while operating a state-owned automobile assigned to him and both of them told him he would be covered under the medical provisions of the policy in any automobile he drove. The J. C. Page Company issued the policy of insurance on the Employers Casualty Company which is in evidence insuring the Ford automobile against loss for a term of one year beginning November 30, 1961.

The plaintiff was injured on January 12, 1962, as the result of a collision while operating a 1961 Dodge automobile belonging to the State and assigned to him for use as a highway patrolman. He had been driving this car for almost a year.

Mr. Head testified that a few weeks after he got the policy of insurance he went back to the J. C. Page Company and asked if he could purchase a liability policy on a highway patrol car. He was told that the cost of the premium on such a policy would be extremely high, but Mrs. Kane stated: "Well, you're covered a thousand dollar medical with the policy you've got on anything you drive."

The first time he went to the Page Company Mr. Bodden said that as far as liability was concerned he was insured on the '58 Ford, but as far as the medical was concerned he was insured on any vehicle he might drive.

On cross examination he stated he didn't tell Mr. Bodden and Mrs. Kane he wanted them to cover him medically while driving the Dodge automobile, he just said any car he might drive.

Mr. Bodden and Mrs. Peggy Kane were called as witnesses for plaintiff. Mr. Bodden testified he is part-owner and manager of J. C. Page Insurance Company, a partnership; that his company is the local agent of the Employers Casualty Company and that J. C. Page Company issued the policy sued on. The policy was in full force and effect on January 12, 1962. At the time application was made for this policy he knew Mr. Head was a member of the Department of Public Safety and that he drove a car which belonged to the State of Alabama. The J. C. Page Company had authority to issue the policy in evidence and it was actually issued and signed from his office. To the best of his knowledge plaintiff did not state he wanted medical benefits in the policy to cover him while driving a highway patrol car in addition to the 1958 Ford and did not request a policy to cover him medically while operating a state car; that he did not recall whether he stated to Mr. Head at the time the policy was issued that he would be covered medically while driving a highway patrol car. Peggy Kane is his office employee. She is not a licensed agent but she has authority to act for J. C. Page. She issues and signs policies and collects premiums. She has no authority to bind the Company to anything other than that which is written in the contract, and neither does he.

Mrs. Peggy Kane testified she performs general office duties for J. C. Page Company. She knew Rufus Head in November, 1961, and knew he was a patrolman and that he drove automobiles assigned to him by the State of Alabama; that she had a conversation with him in her office, during the latter part of November, 1961, about a policy of insurance at which time Mr. Bodden was present. Plaintiff told Mr. Bodden the amounts of the coverage he wanted and she typed the policy. She did not recall Mr. Head's asking if he was covered medically while driving a state-owned vehicle. At a later date but after the accident occurred Mr. Head came back to the office and asked about a liability policy that would cover him while driving a highway patrol car and he was told there would be an additional premium for such a policy.

■ The proof clearly shows that the automobile in which the insured was injured was "furnished for the regular use" of insured, and that the medical payments coverage was excluded under the clear and unambiguous terms of the exclusionary clause. The plaintiff was not entitled to recover under the policy. Moore v. State Farm Mutual Automobile Ins. Co., 239 Miss. 130, 121 So.2d 125. See also Johns v. State Farm Mutual Automobile Insurance Co., 41 Ala.App. 615, 146 So.2d 323; Farm Bureau Mutual Automobile Ins. Co. v. Boecher, Ohio App.1942, 48 N.E.2d 895; Harrill v. Motor Vehicle Casualty Co., D. C.S.D. Iowa 1954, D.C., 122 F.Supp. 389.

In Hartford Fire Insurance Company v. Shapiro, 270 Ala. 149, 117 So.2d 348, Chief Justice Livingston stated the familiar rule that where a written contract of insurance exists between the parties all parol negotiations, understandings and agreements are merged into the written policy, but held that the merger rule does not apply when the parol agreement is independent of, collateral to, and not inconsistent with, the matters embraced in the written policy. The three conditions, at least, which must exist before an oral agreement may be proven to vary the written contract, are quoted with approval from Mitchill v. Lath, 247 N.Y. 377, 160 N.E. 646, 68 A.L.R. 239, are as follows:

"(1) The agreement must in form be a collateral one;

(2) it must not contradict express or implied provisions of the written contract;

(3) it must be one that parties would not ordinarily be expected to embody in the writing, * * *."

We are of opinion that under the principles enunciated in Shapiro none of the above conditions are met by the evidence in the present case.

As regards to Count B of the complaint, charging breach of an oral contract to insure, the Shapiro case, supra, says:

"* * * the general rule is the same as that regarding any other negotiations or agreements culminating in the issuance of a policy, i. e., that they are merged into the policy. (cases cited) The majority of American courts hold that if the policy is accepted by the insured, he is bound thereby, even though the policy does not correspond to the preliminary negotiations."

We are of opinion the court erred in rendering judgment in favor of the plaintiff and against the defendant.

Reversed and remanded.