This is an appeal from a judgment based on a jury verdict rendered against the defendant *Page 83 
in a suit based on the negligent failure to issue an insurance policy and on the breach of an agreement to insure. We affirm.
Terry Glenn Haynes, the appellee, was employed by Richard Keith Haynes (his brother-in-law) and Richard's wife, Francis Glenn Haynes, as a bricklayer and carpenter in the construction of a new family residence during the fall of 1980. On October 22, 1980, Terry Haynes fell from the roof of the house while working. He was permanently disabled. He brought this suit against Richard Keith Haynes, Frances Glenn Haynes, and Alabama Farm Bureau for benefits under the Workmen's Compensation Act. (See Code 1975, § 25-5-1, et seq.) In a judgment made final pursuant to Alabama Rule of Civil Procedure 54 (b), the trial judge ruled that Richard and Frances (the Hayneses) were subject to the Workmen's Compensation Act at the time of the accident, and that the plaintiff was entitled to benefits under the Act. Terry Haynes continued this action as a third-party beneficiary of Alabama Farm Bureau's alleged agreement to insure Richard Keith Haynes and Frances Glenn Haynes.
In September 1980, Richard Keith Haynes and his wife, Frances Glenn Haynes, negotiated a policy of insurance with Alabama Farm Bureau representative Patty Sharp. They contend that they made a contract with Ms. Sharp for a homeowner's policy and for a workmen's compensation policy to cover those employed in the construction of their home. Ms. Sharp solicited the necessary information, collected the premium, and sought approval for the homeowner's policy only. Two weeks later, she mailed the approved homeowner's policy to the Hayneses at the address they listed on the application. Both Mr. and Mrs. Haynes testified that they may have received the policy before the date of the accident, but that neither of them had a chance to review it before October 22. Ms. Sharp never wrote a workmen's compensation policy for the Hayneses. She testified that it was not her understanding at the time she wrote the homeowner's policy that the Hayneses needed and were requesting a workmen's compensation policy. The Hayneses testified that they were not aware that the insurance they received did not cover the injury in question until some time after the injury occurred.
At the trial on the matter of Alabama Farm Bureau's liability for those benefits, testimony was introduced over the defendant's objections concerning the negotiations between the Hayneses and Ms. Sharp. Alabama Farm Bureau contends that the trial court erred in overruling its objections and in denying its motion to exclude the testimony because the parol evidence and merger rules do not allow the use of those negotiations to vary the terms of the written agreement. Alabama Farm Bureau also contends that the court erred by denying its motions for a directed verdict and for a judgment notwithstanding the verdict. We disagree.
In Hartford Fire Ins. Co. v. Shapiro, 270 Ala. 149,117 So.2d 348 (1960), the Court adopted a three-part test to determine when an oral agreement is admissible to vary the terms of a written one:
 "`(1) The agreement must in form be a collateral one; (2) it must not contradict express or implied provisions of the written contract; (3) it must be one that parties would not ordinarily be expected to embody in the writing, * * *.'"
270 Ala. at 154, 117 So.2d at 353, quoting Mitchill v. Lath,247 N.Y. 377, 160 N.E. 646, 647, 68 A.L.R. 239, reargument denied, 248 N.Y. 526, 162 N.E. 511 (1928). If the three parts of this test are met, the parol evidence rule does not apply, and testimony may be introduced to determine whether an oral contract was made in addition to the written one.
The appellant contends that none of the three conditions ofHartford is met by the facts of this case and that the judge erred by allowing the jury to consider the testimony concerning the negotiations. This Court has observed: *Page 84 
 "`* * * (5) the test as to whether the alleged parol agreement is sufficiently distinct and separate so that the parol-evidence rule does not preclude its proof is primarily whether the parties intended the written contract to cover all of the matters embraced in their prior or contemporaneous negotiations, including that part omitted from the writing; (6) in determining this intent, the court should consider the "closeness" of the alleged parol agreement to the writing, the surrounding circumstances as well as the written contract itself, and what parties ordinarily might be expected to do under those circumstances as to inclusion of particular matters in the writing. * * *'"
Annot., 70 A.L.R. 770 (1931), as quoted in Hartford FireInsurance Co. v. Shapiro, 270 Ala. at 153-54,117 So.2d at 352-53.
Professor Wigmore analyzed the problem as follows:
 "`There is a preliminary question for the judge to decide as to the intent of the parties, and upon this he hears evidence on both sides; his decision here, pro or con, concerns merely this question preliminary to the ruling of law. If he decides that the transaction was covered by the writing, he does not decide that the excluded negotiations did not take place, but merely that if they did take place they are nevertheless legally immaterial. If he decides that the transaction was not intended to be covered by the writing, he does not decide that the negotiations did take place, but merely that if they did, they are legally effective, and he then leaves to the jury the determination of fact whether they did take place.'"
IX Wigmore on Evidence 98, § 2430 (3rd ed. 1940), as quoted inHartford Fire Insurance Co. v. Shapiro, 270 Ala. 149, 154,117 So.2d 348, 353 (1960).
Richard Keith Haynes testified in relevant part as follows:
 "Q. All right; what exactly, if you recall, did you tell her that you wanted in the way of insurance coverage?
 "A. I told her that I was constructing a house and I wanted insurance on our workers and on the house itself.
 "Q. Okay; did she agree to write that kind of coverage at that time?
 "A. Yes, sir, she said that she had some forms out in the car and she went out to the car and she said that she would fix me right up."
Frances Haynes also testified about the negotiations with Ms. Sharp:
 "Q. Did you make it clear to her that you wanted two separate coverages, that is, one for the house, you know, whatever that would involve and one for your employees?
"A. Yes, sir, we did.
"Q. Did you direct this directly to her?
"A. Yes, sir.
 "Q. And was Keith sitting there with you and did he say about the same thing before you started talking about it?
 "A. Yes, he did, you know, I guess I talked more about the workers, you know, I know I did.
 "Q. And, did you make it clear to her that you all had a house under construction and that you wanted insurance in case somebody got injured while they were working on your house?
"A. Yes, sir.
 "Q. Is there any doubt in your mind that you conveyed that thought to her?
"A. No, there isn't."
Ms. Sharp testified that she was not aware of the Hayneses' need for a policy of workmen's compensation during the construction of their home.
 "Q. Now, by insurance to cover the house, is that if anything happened to it, is that what you're saying?
"A. Right, we call it a builder's risk coverage.
 "Q. All right; did they say anything to you about needing anything other than coverage on the house?
"A. No, sir.
 "Q. Was there ever any conversation about coverage for individual workers or *Page 85 
anybody that might be hurt on the premises, you know, was that discussed at all?
 "A. Well, the thing that we talked about more than anything was the liability and the big question in my mind was that I knew that Keith did farming for his father and we offered two contracts. We offer a homeowner's policy for a person maybe that has a house and a lot; and we also offer a farm owner's policy and on the farm owner's it tends to cover the farming liability, you know, the liability on the tractors and the combines and what have you. So, my big question was whether to write him a farm owner contract, since he did do farming, or since his father had a farm owner's policy, if that would cover it, and if I should put his house on a homeowner's policy. So, we talked about that.
 "Q. Okay; now, by liability coverage, do you mean a coverage that would defend them and pay damages if somebody sued them or made claim against them and got money from them, is that what you meant by liability?
"A. Yes."
Additionally, both Mr. and Mrs. Haynes testified that neither of them knew whether the coverage they requested would be included in one writing or would be set out in more than one writing.
It is clear that any agreement to provide workmen's compensation coverage would have been collateral to the agreement to issue a homeowner's policy. Thus, the first prong of the Hartford test is met by these facts.
The second prong of the test, which requires that the oral agreement not contradict the express or implied provisions of the written contract, is also met. The appellant argues that paragraph 2 (b) of the "Exclusions" portion of the homeowner's policy expressly contradicts the alleged oral agreement. We do not agree. The paragraph reads, in relevant part, as follows:
"This policy does not apply:
". . . .
 "to bodily injury to any person . . . if benefits for such bodily injury are in whole or in part either payable or required to be provided by the insured under any workmen's compensation or occupational disease law. . . ."
While this paragraph does provide that workmen's compensation benefits will not be paid pursuant to this homeowner's policy, it does not prevent a workmen's compensation policy from being in effect simultaneously. This paragraph would not apprise a reasonable person of the existence or non-existence of workmen's compensation coverage in conjunction with this homeowner's policy.
The third prong of the Hartford test, which requires that the oral agreement "must be one that parties would not ordinarily be expected to embody in the writing," Hartford, supra, is met in this case. A reasonable person would not ordinarily expect workmen's compensation coverage to be included in the same writing as homeowner's coverage. The trial court was correct in its ruling that, as a matter of law, the parol evidence was admissible.
The jury's task was to resolve the questions of fact of whether the Hayneses intended the written contract they received to cover both the homeowner's insurance and the workmen's compensation policy and whether there was a "meeting of the minds" of Ms. Sharp and the Hayneses with regard to the additional workmen's compensation coverage.
Finally, the scintilla rule requires that issues in civil cases must go to the jury if the evidence, or a reasonable inference therefrom, furnishes a glimmer or trace in support of an issue. Hartford Accident Indemnity Co. v. Cosby, 277 Ala. 596, 173 So.2d 585 (1965); Elba Wood Products, Inc. v. Brackin,356 So.2d 119 (Ala. 1978). In light of the testimony set out above, we cannot say as a matter of law that Terry Haynes failed to produce a scintilla of evidence on the question of whether there was mutual assent between Ms. Sharp and Richard and Frances Haynes. It would be reasonable for the *Page 86 
jury to infer from the evidence in this case that Ms. Sharp knew or should have known that the coverage she agreed to provide included workmen's compensation. It is the function of the jury, which is authorized to draw all reasonable inferences from the evidence, to resolve controverted factual inferences.George v. Nevett, 462 So.2d 728 (Ala. 1984).
AFFIRMED.
TORBERT, C.J., and FAULKNER, ADAMS and HOUSTON, JJ., concur.