HOUSTON, Justice.
Arno Mayfield and his wife, Jackueline Mayfield, appeal from a summary judgment granted in favor of Cotton States Mutual Insurance Company and Randall Gardner in this action to recover damages for breach of contract. We affirm.
The plaintiffs’ complaint reads as follows:
“1. On or about the 28th day of September, 1981, the Cotton States Mutual Insurance Company, by and through its agent, Randall Gardner, and Randall Gardner individually, entered into an agreement by which the defendants severally promised to insure the plaintiff or provide insurance for the plaintiff for loss due to certain perils which included loss due to fire.
“2. Defendants breached said agreement, for after plaintiffs suffered loss by virtue of fire, the defendant Cotton States Mutual Insurance company refused to pay said loss, the date of said loss being December 4, 1982, and said agreement as referred to in paragraph 1. herein having been agreement to provide coverage through Cotton States Mutual Insurance Company.
“WHEREFORE, PLAINTIFFS DEMAND JUDGMENT AGAINST DEFENDANTS in the sum of $25,000.00, interest and costs.”
All facts were presented to the trial court by way of affidavits (and attachments thereto) in support of and in opposition to the defendants’ motion for summary judgment.
The defendants submitted the affidavits of Stan Lummus and Randall Gardner. Lummus’s affidavit reads as follows:
“My name is Stan Lummus, and I am a resident of the State of Georgia, over twenty-one (21) years of age. I have personal knowledge of the facts and the matters stated in this Affidavit. I am an employee of Cotton States Mutual Insur- *549 anee Company, which has its home offices in Atlanta, Georgia. At the present time I hold the position of Manager of the Personnel Lines Underwriting Department, which Position I have held since April 1, 1985. I have been employed in the Underwriting Department of Cotton States since April 1, 1985. I am familiar with the records and record-, keeping procedures of Cotton States Mutual Insurance Company, including records of the issuance, renewal, and cancellation of policies such as the one made the basis of the above entitled action.
“I have reviewed the records of Cotton States Mutual Insurance Company relative to Policy No. 20 218621, which was issued by Cotton States to Amo Vance Mayfield and Jackueline Mayfield, and upon which this action is based. The policy originally went into effect on September 28, 1979, and was on an annual renewal basis. Exhibit ‘A’ [omitted from this opinion] is a true and correct copy of said policy of insurance. The effective date of the last renewal of the policy was September 28, 1981; and in the absence of cancellation or other termination, the policy would have expired on September 28, 1982. The policy was applied for through the Randall Gardner Agency, in Crossville, Alabama.
“The application for coverage which was submitted by Mr. and Mrs. Mayfield listed as mortgagee ‘Federal Land Bank of New Orleans, P.O. Box 257, Rains-ville, AT; and this information was placed on the declarations page of the policy. Exhibit ‘B’ [omitted from this opinion] is a true copy of that portion of the application which names the mortgagee.
“When the policy was renewed in September, 1981 it was placed on a ‘premium payment plan’ which required the insured to pay installment payments of premium on 9/28/81, 11/28/81, 1/28/82, 3/28/82, 5/28/82 and 7/28/82. The first three of these payments were made, but the payment which was due on March 28, 1982 was never received by Cotton States Mutual Insurance Company. On or about April 2, 1982, two additional poultry houses had been added to this policy, at an additional premium of $133.68. This amount was received by Cotton States, prior to the time that the fact the March 28, 1982 installment premium had not been paid would have created any particular concern within the Home office. The computer which keeps up with these late installment payments is programmed to send automatic cancellation notices a certain time after an installment is late; and in this particular case, the ‘programmed’ cancellation notice went out on April 27, 1982.
“When the 3/28/82 premium installment had not been received by 4/30/82, a notice of Cancellation was sent to the insureds and to the mortgagee. Exhibit ‘C’ [omitted from this opinion] is a true copy of that cancellation notice. That same day the agent was advised of the cancellation, and a Company check was sent to the agent for forwarding to the insureds. This check was for the unearned premium on the policy after its cancellation date of April 5, 1982.[1] A true copy of that check is attached hereto as Exhibit ‘D’ [omitted from this opinion].” This check has been negotiated by the payees and has been charged to the account of Cotton States at the bank on which it was drawn.
“The cancellation notice to the mortgagee was sent by certified mail, as required by the policy. Exhibit ‘E’ [omitted from this opinion] is a true copy of the certified mailing list of Cotton States Mutual Insurance Company for the date of April 30, 1982, and bears the stamp of the U.S. Postal Service, acknowledging receipt of this particular item. Item 14 is the notice which was sent to the mortgagee, and shows the policy number, *550 name of addressee, etc. The policy does not require certified mail service to the insured in order to effect cancellation.
“Had this policy not been cancelled effective May 15, 1982, its natural expiration would have occurred on September 28, 1982. The loss upon which this action is based occurred after that date, on December 4, 1982, according to the records of Cotton States Mutual Insurance Company.”
Gardner’s affidavit reads as follows:
“My name is Randall G. Gardner, and I am a resident of DeKalb County, Alabama, over nineteen (19) years of age. I have personal knowledge of the facts and the matters stated in this Affidavit.
“I have a contract to solicit, sell and service policies of insurance issued by Cotton States Mutual Insurance Company, and have held such contracts since April 2, 1973. Exhibit ‘A’ is a true copy of my contract with Cotton States, as it existed in 1979, 1980, 1981, and 1982.
“In 1979,1 solicited the sale of a policy of insurance issued by Cotton States Insurance Company to Arno Vance May-field and Jackueline Mayfield, viz.: Policy No. 20 218621, which policy is made the basis of the above entitled lawsuit. The policy ran annually, from 9/28/79 to 9/28/80, and so on.
“At or prior to the time of the 9/28/81 renewal, at the request of Mr. Mayfield, the policy was put on a plan which allowed the premium to be paid in six installments, with the installments being due on 9/28/81, 11/28/81, 1/28/82, 3/28/82, 5/28/82, and 7/28/82. The premium payments ordinarily are made directly to Cotton States, and not to me or my agency.
“About 4/2/82, I requested that two additional poultry houses be added to the Mayfield policy. This was done, and Mr. Mayfield paid an additional premium of $133.68 for this change. At that time I had no knowledge of whether the 3/28/82 installment premium had been paid.
“On May 3, 1982, I received in my office a copy of a cancellation notice sent by Cotton States to Mr. and Mrs. May-field and to their mortgagee, dated 4/30/82. Exhibit ‘B’ [omitted from this opinion] is a true copy of the notice I received. It bears a ‘rec’d’ stamp of my agency in the upper right hand corner. On May 5, 1982 I received from Cotton States a memorandum of this cancellation, of which a true copy is attached hereto as Exhibit ‘C’ [omitted from this opinion] and which also shows my agency ‘rec’d’ stamp. Along with this memo was a check from Cotton States to Arno Vance Mayfield and Jackueline Mayfield, in the amount of $102.78, representing the unearned portion of the policy premium, after cancellation. A true copy of this check is attached as Exhibit ‘D’ hereto [omitted from this opinion].
“On May 5, 1982 I sent the original of Exhibit ‘D’ to Mr. Mayfield at his last known address, together with my own, handwritten note explaining why the check was being sent. This memo and check were sent in a window envelope, which is the only type envelope my agency uses; with the memo being folded so that the name of the addressee appears in the ‘windowed’ portion.
“After that date I heard nothing further from Mr. or Mrs. Mayfield until after a fire damaged or destroyed one of their poultry houses on or about December 4, 1982. This not only was after the cancellation had been effected, but also was after the natural expiration date of the last policy or renewal issued to Mr. and Mrs. Mayfield, which policy would have expired on 9/28/82. Between April 30,1982 and December 4,1982, no premiums were paid to me or my agency by either Mr. or Mrs. Mayfield, and in my best recollection we had no contact of any kind or nature whatsoever, relating to business.
“On December 13, 1982, Mr. Mayfield called me at my office to discuss his loss and the status of his coverage. I have a tape recording of this conversation. I told Mr. Mayfield that my records indi *551 cated the policy was cancelled effective 5/15/82. Mr. Mayfield explained that about the time the cancellation took place, he had undergone heart surgery. I told him he was welcome to come and look over my file, and he said he did not doubt what I was saying to him about the cancellation. He implied to me that he had confused the bill for the addition of the two poultry houses on April 2, 1982 with its premium installment bill, which was due on March 28, 1982. He admitted to me in the course of this conversation that he remembered getting the check (Exhibit ‘D’) while he was recuperating from his surgery. He then said he ‘should have thought something there,’ and he ‘should have realized’ (what had happened) and that he should have called to ask me about the check. He also indicated that he remembered the ‘letter’ (which I understood to mean the memorandum I referred to herein) and he ‘remembered it being in there when I got it.’ A true and correct copy of the memorandum which I sent with the Cotton States check is attached hereto as Exhibit ‘E’ [omitted from this opinion].
“At the close of the conversation between myself and Mr. Mayfield, the following was stated:
“Gardner: ‘I wish I was in a position to be able to help you, you know, but there’s not any way I can.’
“Mayfield: ‘No, we just made a mistake.’
“Gardner: ‘Well, if I can help you in the future, let me know, Mr. Mayfield.’
“Mayfield: ‘Okay, all right, sir.’
“Gardner: T sure am sorry. Thank you.’
“My agency contract does not allow me to alter, amend or modify policies without the consent of the Company in writing, nor to extend the term thereof. I have never told either Arno Vance May-field or Jackueline Mayfield that I would keep them insured ‘no matter what,’ especially in the absence of any premium payment. Neither [I] nor my insurance agency is an ‘insurance company,’ and we are not authorized to insure risks. All insurance I place has to be placed through an authorized insurance company, admitted to do business in the State of Alabama.”
The plaintiffs submitted two affidavits from Arno Mayfield. The first reads:
“1. In 1967 I built 2 chicken houses and insured them with Chester Raines Insurance Company in Albertville, Alabama.
“2. In 1978, I built 2 more chicken houses and insured them with Cotton States Insurance Company in Crossville, Alabama.
“3. In the Spring of 1982, the Raines Agency increased their premiums. At this time, I decided to combine all 4 chicken houses with Cotton States Insurance Company of Crossville. I called Mr. Gardner, the Cotton States agent, and asked him to insure all 4 chicken houses. He agreed to this, but stated the Insurance Company would probably require me to include my house in on this combination insurance. I advised him that my house insurance was paid up until December 23, 1982, with Chester Raines Insurance company, but that I would include my house when the present coverage ran out. He advised me that he could save me money by combining house and chicken houses with one company.
“4. On March 1, 1982, I suffered a heart attack and on April 8, 1982, I underwent open heart surgery in Birmingham, Alabama. I returned home April 17, 1982. Upon returning home we received a statement for $133.68 to be paid to Cotton States Insurance along with a new policy which showed all 4 chicken houses were covered in this policy. On April 22, 1982, I sent a check for this amount. A few weeks later, we received a refund check from Cotton States Insurance Company for approximately $101.00. I thought at this time that the check was a refund from the old policy.
*552 “5. On December 4, 1982, one of the newer chicken houses that had always been insured by Cotton States Insurance burned. I contacted Mr. Gardner, the Cotton States agent, on the following morning and told him about the fire. He told me at this time that my insurance had been cancelled. I asked him why, and was told because of lack of payment of insurance.
“6. Mr. Gardner stated that he was on his way to church, but that he would check his file immediately after church and contact me. He called me later that afternoon and advised me my insurance had been cancelled. I asked him why my insurance was cancelled, and he answered that 1) the Company had sent us a statement for the insurance; 2) that we did not respond to a reminder that our insurance had not been paid; 3) he stated that a letter was also sent from his office reminding me that the insurance was due; 4) that when we did not respond, he cancelled the insurance and sent the refund check, and 5) he advised me that Federal Land Bank was notified of this cancellation by letter.
“7. I told Mr. Gardner that it was possible that we had made a mistake and not paid the premium, but after talking with my wife who had handled all the bills during that period of time, I found that we did not receive a statement nor did we receive any notice of cancellation. We did receive a refund check of approximately $101.00, which we understood to be connected with the changeover of our insurance to a new policy.
“8. I then called Mr. Gardner again and related these facts to him and told him that I felt we should be covered, to which he responded that there was nothing he could do.
“9. Not only did we receive no letter with regard to termination or any other notice of termination, but, Federal Land Bank, at the request of Cotton States, had produced their file, a copy of which is attached hereto and made a part hereof by reference [omitted from this opinion]. That file reflects that they did not receive notice of cancellation until subsequent to date of loss. This is reflected by their letter of January 19, 1983, contained in that exhibit.
“10. Had Federal Land Bank, a loss payee on the policy, received notification of the cancellation, they would have contacted me, and the premium would have been paid and coverage continued.
“11. I have never been without insurance on my chicken houses, and, except for the actions of Cotton States and Randall Gardner, would not have been without an in force policy on the date of my loss, December 4,1982. The policy noted that it was a continuous renewal plan, a copy of which policy is attached as Exhibit ‘B’ hereto [omitted from this opinion].”
The second reads:
“1. I was contacted by Randall Gardner for him to handle my insurance needs and he agreed to do so. I turned all of my insurance over to him, and he was to keep me insured. All I had to do was to pay premiums when I was notified that they were due. I did that. I never received any notice of premiums which went unpaid nor did I receive any notice of cancellation.
“2. Mr. Gardner was the only representative of Cotton States I had any contact with. He sold the insurance, took care of policy and was my contact with the company. It appeared to me that he had full authority to represent Cotton. States.”
The plaintiffs framed their argument in their brief as follows:
“The contract sued upon in this cause is not the actual contract of insurance issued by Cotton States.... That policy expired by its terms on September 28, 1982, the loss having occurred some three months thereafter, on December 4, 1982. Those facts are uncontroverted.
“The contract sued upon is the contract which [plaintiffs] contend existed between [plaintiffs] and Randall Gardner, individually, and [Cotton States] by *553 virtue of Mr. Gardner’s apparent authority for Cotton States_ The actual insurance policy which had been previously issued would be admissible only as evidence of the insurance which was to be provided by the [defendants]. [Plaintiffs] would submit to the Court that the trial Court erroneously focused on the insurance policy that was actually issued rather than the contract being sued upon in granting summary judgment.
“[Plaintiffs] would agree that there is no question of material fact as to recovery on the issued policy. The [plaintiffs] are not, and do not contend that they are, entitled to recover on that policy which expired on its face.”
As we understand the plaintiffs’ argument, they concede that they are not entitled to recover upon the written contract of insurance issued by Cotton States. They insist however, that they are entitled to recover from Gardner individually (and Cotton States on agency principles) under a somewhat puzzling theory that they are liable by virtue of an oral contract to insure. We must disagree.
Summary judgment is proper when there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Rule 56(c), Ala. R.Civ.P. All reasonable doubts concerning the existence of a genuine issue of fact must be resolved against the moving party. Fountain v. Phillips, 404 So.2d 614 (Ala.1981).
The evidence is undisputed that the Randall Gardner Agency is not an insurance company. Gardner had a contract with Cotton States to solicit, sell, and service policies of insurance issued by it, and Arno Mayfield was fully aware that Gardner was an agent representing Cotton States. Pursuant to the negotiations between the plaintiffs and the defendants, the contract of insurance was renewed on September 28, 1981, as evidenced by the written policy naming the Mayfields as insureds. This contract was amended by the the addition of a “declaration page” on April 2, 1982, to extend coverage to the two additional poultry houses.[2] This contract was cancelled by Cotton States prior to the date of the loss because the premiums were not paid. The plaintiffs concede that they are not entitled to recover under that contract.
In Hartford Fire Insurance Co. v. Shapiro, 270 Ala. 149, 117 So.2d 348 (1960), the Court stated:
“Where there exists between the parties a written contract, the authorities are in agreement that parol evidence cannot be received to explain, contradict, vary, add to, or subtract from its terms. Bozeman v. J.B. Colt Co., 19 Ala.App. 126, 95 So. 588; W.T. Rawleigh Co. v. Phillips, 232 Ala. 124, 167 So. 271; Worthington v. Davis, 208 Ala. 600, 609, 94 So. 806; Town of Brewton v. Glass, 116 Ala. 629, 22 So. 916. The statement of this rule employed in insurance cases, is that all parol negotiations, understandings and agreements are merged into the written policy. Jefferson Life & Casualty Co. v. Williams, 37 Ala.App. 718, 76 So.2d 185.”
In the present case, the written version of the renewed contract (as amended) was accepted by the plaintiffs. Therefore, the plaintiffs were bound by the terms of that written contract and it is determinative of their rights in this case. See also Smith v. Protective Life Insurance Co., 355 So.2d 728 (Ala.Civ.App.1978).
There being no genuine issue of material fact, a summary judgment was proper in this case.
AFFIRMED.
TORBERT, C.J., and MADDOX, AL-MON and BEATTY, JJ., concur.

. We note that the effective date of cancellation is subsequently referred to in the affidavit as May 15, 1982. Randall Gardner also stated in his affidavit that the policy was cancelled effective May 15, 1982.

. It is difficult to tell from the plaintiffs’ brief whether they contend the alleged oral contract came into existence on September 28, 1981 (which is the date alleged in the complaint) or on April 2, 1982. However, we would reach the same result under our analysis as to either date.