This is a child custody modification case.
The father sought custody of a minor child, which by a previous decree of divorce was in the custody of the mother. After an ore tenus hearing, the trial court changed the custody of the child awarding custody to the father. The mother, through able counsel, appeals and we affirm.
The primary dispositive issue on appeal is whether the evidence supports the trial court's action in modifying the prior decree of divorce and awarding custody to the father.
At the outset, we note that it is not necessary to relate in detail the evidence adduced at trial. Suffice it to say that, viewing the record with the attendant presumptions accorded the trial court decree, the following is pertinently revealed.
The couple was divorced in August of 1980. The divorce decree incorporated a settlement agreement between the parties which granted the wife custody of the couple's only child, Jamie Michelle Davis, set the husband's child support obligation at $225 per month, and granted the husband "reasonable visitation rights to be determined by both parties using good faith efforts."
After the divorce, the wife, Gail Davis, took an "eight-to-four" job at Baptist Medical Center and was also a cocktail waitress part-time. She later quit the Baptist Medical Center job, however, because she found *Page 318 
it difficult to hold down both jobs, and expanded her hours as a cocktail waitress, working from five o'clock in the afternoon to closing (any time from eleven p.m. to three a.m.). She subsequently left this job and moved to another establishment, cocktail waitressing and managing from four p.m. to closing (anytime from ten p.m. to two a.m.).
On Thanksgiving Day 1982, Gail Davis opened her own bar, in Montgomery, with a partner, Ronnie Waters. According to the testimony of Mr. Waters's wife, the partnership agreement was that Mr. Waters would put up the capital investment, and Gail would "run" the bar, being there most of the bar's opening hours, which were two p.m. to five a.m. Mr. Waters only rarely worked at night, and after two and one-half months he agreed to sell his share of the business to Gail, partly because the two had different ideas about running the bar. At the time of the hearing in this matter, Gail was still the sole owner of the establishment; she was spending a great deal of time at the bar during its opening hours to supervise operations. She was also coming in in the mornings before the bar opened to keep the books, make bank deposits, clean up, and make out food orders, and she was talking about opening a second establishment in Gulf Shores, Alabama.
The entire time that Gail cocktail waitressed and then later, when she opened her own business, she was unable to devise a stable arrangement for someone to supervise Jamie when she had to be at work. Although she did have Jamie in a day care center during the days, at nights, while Gail was waitressing and then later when she was running her own business, she consistently farmed out Jamie to various relatives and different babysitters. On several occasions Gail had roommates, relatives, or other sitters in her own home to stay with Jamie, but the child was often sent to stay with neighbors, friends, or relatives in or near Montgomery. Evidence revealed that from February of 1981 until April of 1983, Jamie spent at least 399 nights away from her home. There were months, right after the business opened, that Jamie spent as many as twenty-two days and nine nights away from her mother and home. There was also an occasion when Gail left Jamie with others for several days at a time.
There was also evidence that Jamie's personal needs were not always met — that Gail did not show much interest in her school work, that there was not always adequate food around the house, that Jamie sometimes went to day care dirty or with wrinkled clothes, that she had problems with her ears that were not always tended to, and that for a period of time Jamie did not have her own bed to sleep in but was allowed to fall asleep on a comforter placed in front of the fireplace.
The husband filed a petition for modification on August 26, 1982, seeking to reduce his child support obligations because he had suffered a decrease in earnings. He also asked that custody of Jamie be transferred to him because Gail had been unable to arrange suitable nighttime supervision for the child.
On December 10, 1983, upon a joint petition for modification filed by the parties, the trial court reduced the father's monthly child support obligation to $132. The court also clarified the husband's visitation rights, giving the husband first option to keep the child nights or any other time that Gail could not keep her.
On May 1, 1983, the father remarried. His new wife is a business and office coordinator at a Montgomery high school, earning $22,500 a year and working from 7:30 a.m. to 1:00 p.m. She testified that she and Jamie get along very well and that when Jamie is with her father, the three attend church regularly and engage in such activities as trips to the zoo or the mall, picnics, and visits with out-of-town relatives.
On August 19, 1983, the court entered a final order, awarding custody to the father, requiring Gail to pay $200 a month child support, and setting eight specific visitation periods for the mother. Gail then filed a Rule 59 (e) motion to have visitation extended in three respects, but the trial court *Page 319 
denied her motion. She then appealed to this court.
A trial court judgment entered after an ore tenus trial carries a presumption of correctness. Sain v. Sain,426 So.2d 853 (Ala.Civ.App. 1983). Such judgment, if supported by competent evidence, will not be set aside unless palpably wrong. Hall v. Polk, 363 So.2d 300 (Ala. 1978).
A decision regarding modification of child custody rests within the sound discretion of the trial judge. The party who seeks such modification carries the burden of proof, seeSanders v. Sanders, 425 So.2d 476 (Ala.Civ.App. 1983), and must establish that there has been such a material change in circumstances since the last custody decree that the welfare and best interests of the child require the change sought.Hallford v. Hallford, 390 So.2d 295 (Ala.Civ.App. 1980).
In the instant appeal we can find no error in the trial court's decision to transfer custody of the four-year-old child to her father. The evidence reveals a material change in circumstances, that change being after becoming divorced, the mother began working nights and was unable to provide suitable and stable supervision for the child. This problem was only compounded when the mother opened her own night club. On the other hand, the father had remarried to a woman who loved Jamie, and there is evidence that together the father and his new wife could provide a stable home for the child with adequate supervision.
On appeal, the mother also raised as error the trial court's consideration of evidence predating the December 10, 1983, modification. Because the December 10, 1983, modification was based upon a "stipulation" of the parties, this contention is without merit. See Wilson v. Wilson, 408 So.2d 114, 116
(Ala.Civ.App. 1981), cert. denied, 408 So.2d 117 (Ala. 1982).
In addressing the mother's Rule 59 (e) visitation claim, we are bound by the following statement in Naylor v. Oden,444 So.2d 861, 862 (Ala.Civ.App. 1983):
 "The law is clear that the trial court is accorded much discretion in its judgment concerning visitation. Crane v. Crane, 392 So.2d 242
(Ala.Civ.App. 1980). Under the ore tenus rule, our review of the trial court's order is controlled by the principle that this court will not substitute its judgment for that of the trial court and will reverse only where the evidence shows the trial court to have been plainly and palpably wrong and unjust. Crane v. Crane, 392 So.2d 242 (Ala.Civ.App. 1980)."
After having reviewed the record, we cannot say that the trial court was plainly and palpably wrong and unjust in its refusal to extend visitation as requested by the mother. Its judgment in this regard is also due to be affirmed.
In addition to the above, the mother contends the trial court "improperly" considered a report from the Department of Pensions and Security. Assuming without so deciding that the mother's contention is correct, such error in this instance, in view of the evidence set out herein above, would not require reversal. See Rule 45, Alabama Rules of Appellate Procedure.
Other evidentiary rulings complained of by the mother would also, if error, fall within the provision of Rule 45, A.R.A.P.
The father's request for attorney fees for representation on appeal is, in view of all the circumstances and hopefully in the best interest of all concerned, denied.
AFFIRMED.
All the Judges concur. *Page 320