WRIGHT, Presiding Judge.
In March 1979, by order of the Family Court of Jefferson County, Ramona Shad-dix, a minor, was committed to the care, custody and control of the State Department of Mental Health and Mental Retardation (Mental Health). Ramona had previously been adjudicated dependent and was, immediately prior to the foregoing order, in the care, custody and control of the Shelby County Department of Pensions and Security (DPS).
Shortly after her admission into Mental Health’s Bryce Hospital, Ramona’s condition began to improve markedly. Because of this improvement, the hospital’s staff and administration attempted to provide her with treatment in less restrictive environments than that existing at Bryce. For example, she was permitted a trial visit to what is known as Camp Sunshine, a therapeutic summer camp in Mentone, Alabama.
Upon her return to Bryce Hospital after this camp, the staff apparently noticed an even greater improvement in her condition. The hospital administration, which had been keeping the family court judge that had ordered her commitment informed as to Ramona’s progress, sent a letter to the judge in which it stated that it was the opinion of the hospital’s staff that Ramona should be allowed to continue her treatment in an environment less restrictive than Bryce Hospital.
After receipt of this letter, the family court judge sent a correspondence to the DPS social worker that had earlier been assigned to Ramona’s case. He asked that DPS assist Mental Health in locating a more appropriate treatment facility than Bryce Hospital. Apparently, DPS consented to this request. In March 1980, the family court judge was informed, by letter, that in cooperation with DPS, Mental Health had located a facility. It had been decided that Ramona should be placed in a Birmingham residential treatment facility known as the McDonough House. DPS and Mental Health, for whatever reason, decided that the cost for Ramona’s treatment at McDonough House would be shared equally by the two departments.
Then, in September 1980, the family court judge received a letter from an official at Mental Health. This letter stated that they had discharged Ramona from their custody. At no time did Mental Health or any of its representatives file a formal petition with the court asking to be relieved of Ramona’s custody. No action was taken by the court at this time.
However, in May 1985, a petition was filed in the family court by Joe Carter, the coordinator of McDonough House. The petition revealed that a dispute had arisen between Mental Health and DPS as to which department was responsible for Ramona’s care and custody. Each argued that the other was legally responsible for her care. The petition did not disclose what became of the agreement to share costs. The petition simply asked the court to determine which department had custody of the child.
At the hearing on the petition, the family court judge hearing the case was not the same as the one who had received the prior letters. The judge refused, over objections by DPS counsel, to allow any testimony concerning the best interests of the child. He viewed the issue of the custody of the child as one of law. He ordered that custody of the child be placed with the Jefferson *733 County DPS. He further ordered the DPS departments of Jefferson and Shelby counties to determine administratively, between themselves, which department must be financially responsible for the care of the child. DPS appeals from this order.
This court’s recent decision in Ex parte Wallis, [Ms. July 81, 1985] (Ala.Civ.App.1985), made clear that the Department of Mental Health may not discharge a minor that has been committed to its custody by court order. The minor may be released from its legaKeustody only by a proper court order. Id.
Normally, to obtain such an order, Mental Health must file a petition in the appropriate court. However, any pleading which shows upon its face that the welfare of a minor requires an order with respect to its custody or support is sufficient to invoke the court’s jurisdiction. Tcherneshoff v. Tcherneshoff, 283 Ala. 700, 220 So.2d 888 (1969).
In this case, Mental Health remained responsible as the legal custodian of Ramona when Joe Carter filed the current petition. That petition, asking for a determination as to existing custody and pleading the basic facts of the dispute between Mental Health and DPS, was sufficient to put the court on notice that modification of the prior custody order was necessary.
If the court had merely decided, as a matter of law, the existing custodial responsibilities of the parties, there may have been no need to take any testimony. One could argue, as does Mental Health, that the court was simply acting under its inherent power to interpret its own orders. See Hurd v. Hurd, 456 So.2d 316 (Ala.Civ. App.1984); Horsley v. Horsley, 390 So.2d 1058 (Ala.Civ.App.1980). However, an order which works a legal change as to custody must be based upon evidence which suggests that the change of custody will materially promote the child’s best interests and welfare. Ex parte McLendon, 455 So.2d 863 (Ala.1984); In re Stacks, 406 So.2d 979 (Ala.Civ.App.1981). Even if the petition had been filed in the first instance by Mental Health, any interested party would have the right to be heard at the ensuing hearing. See Ex parte Wallis, supra.
Because the family court judge refused to allow DPS to present evidence concerning the child’s best interest, we reverse and remand the cause to that court. There, the judge can conduct the proper hearing as prescribed by our decision in Ex parte Wallis and this opinion.
REVERSED AND REMANDED.
BRADLEY and HOLMES, JJ., concur.