WRIGHT, Presiding Judge.
In July 1985, by order of the Juvenile Court of Russell County, Ronald Eugene Bryant (Gene), a child only ten years of age, was committed to the custody of the Alabama Department of Mental Health and Mental Retardation (Mental Health). Apparently, Gene had previously been adjudicated dependent and was, immediately pri- or to the foregoing order, in the custody of the Alabama Department of Pensions and Security (DPS). In August 1985, less than one month after his commitment, Mental Health filed a petition with the juvenile court asking to be relieved of Gene’s custody. The juvenile court, after an ore tenus hearing, denied the petition and ordered that custody remain with Mental Health. Mental Health appeals from this decision.
Initially, we note that this court’s recent decision in Ex parte Wallis, [Ms. July 81, 1985] (Ala.Civ.App.1985), made clear that the Department of Mental Health may not discharge a minor that has beem committed to its custody by court order. The minor may be released only by a proper court order. Id. See also In The Matter of: Shaddix, 485 So.2d 731 (Ala.Civ.App.1986). Mental Health has filed the appropriate petition seeking such an order in this case.
In Shaddix, we observed that because such an order “works a legal change as to custody,” it “must be based upon evidence which suggests that the change of custody will materially promote the child’s best interests and welfare.” Consistent with this position, although we recognize that there are necessarily inherent differences between the two proceedings, we determine that the hearing required in a proceeding for relief of custody must be attended by procedures analogous to those followed in the normal custodial modification proceedings.
Thus, the decision regarding relief from custody must rest within the sound discretion of the trial judge. See Davis v. Davis, 451 So.2d 316 (Ala.Civ.App.1984). Such a decision, if made after an ore tenus hearing, must be presumed correct and should not be reversed absent an abuse of discretion. Id.
The party seeking to be relieved of custody (Mental Health) has the burden of proof. In this kind of change of custody proceeding, Mental Health must establish that there has been such a material change in circumstances since the last custody order, that the welfare and best interests of the child require the release. See Id. See also Ex parte McLendon, 455 So.2d 863 *752 (Ala.1984); Le., that the purpose of its custody has been accomplished or cannot be accomplished. Placing the burden of proof on the party petitioning to be released from its custodial obligations is consistent with current Alabama law concerning the mentally ill adult. After a person has been adjudicated mentally ill, or mentally incompetent, the burden of proof in later proceedings is placed on that person or persons alleging that he is now sane. See Nigg v. Smith, 395 So.2d 47 (Ala.1981).
What possible circumstances might be shown to exist which would support an order releasing Mental Health from its custodial responsibilities must remain open for future factual development. We suggest some possibilities as follows (we do not comment in this case as to the effect the amendment of § 12-15-90 by Act No. 85-928, effective September 27, 1985, may have upon future cases):
(1) that the child’s treatment opportunities at Mental Health have been exhausted, see Wallis, supra, or
(2) that the minor is no longer mentally ill, see § 12-15-90(i)(l), Code of Alabama 1975, or
(3) that the child no longer poses a real and present threat of substantial harm to himself or others, see § 12 — 15—90(i)(2), (3), (4), Code 1975, or
(4) that such commitment is no longer the least restrictive alternative necessary and available for treatment of the child’s illness, see § 12 — 15—90(i)(5), Code 1975.
At an ore tenus hearing on its petition, Mental Health presented the testimony of only one witness, Dr. John R. Goff, Chief Psychologist at Bryce Hospital, to meet its burden of proof. Dr. Goff testified that, in his opinion, Gene is not mentally ill; does not have any treatable mental illness; does not pose a real and present threat of substantial harm to himself or to others; and that it is not necessary to confine Gene for either his own well being or that of the community.
Counsel for Mental Health argues that this testimony, because it is that of an expert, was conclusive upon the issue of Gene’s mental illness and his need for commitment. This argument does not entirely comport with Alabama case law.
While it is true that courts are “prone to accord more weight” to medical opinion testimony than to other evidence relevant to a person’s mental capacity, Box v. Box, 253 Ala. 297, 45 So.2d 157 (1950), this is not a settled rule. Hester v. Hester, 474 So.2d 734 (Ala.Civ.App.1985). See Smith v. Smith, 254 Ala. 404, 48 So.2d 546 (1950) (the opinion of an expert witness is not conclusive, but is to be weighed like other evidence). The “whole evidence” must be weighed to make a determination as to one’s mental capacity. Watson v. Anderson, 13 Ala. 202 (1848); Hester, supra.
Our review of the record, taking the testimony as “a whole,” does not support the conclusion that the trial court has abused its discretion by denying Mental Health’s petition for relief of custody.
We note first, that a very excellent cross-examination of Dr. Goff may have justifiably diminished his credibility in the eyes of the trial court. It was revealed that his opinion was based upon what one might call a rather narrow investigation of Gene’s circumstances. He merely reviewed records made available to him by the Vaughan Clinic in Birmingham, discussed the case for several minutes with Dr. Wisely of the clinic, and interviewed Gene for about forty-five minutes. While we do not say that this would not be a sufficient investigation upon which to base an expert opinion, we do note that it appeared that much relevant information was ignored by the doctor. For example, while he specifically reviewed Gene’s score on the Wech-sler Intelligence Test for Children (WISC-R), he ignored available results from a number of other psychological examinations, including the Bender Gestalt Test, a Roberts Apperception Test for Children, and a Projective Drawings Test. On the other hand, an evaluation submitted by Dr. Wisely of the Vaughan Clinic and admitted into evidence, specifically considered not only the WISC-R score, but also the other *753 test scores. While Dr. Goff opined that Gene was not mentally ill, Dr. Wisely diagnosed Gene as having a “conduct disorder, undersocialized, aggressive.” By Dr. Goff's own admission, a “conduct disorder” is listed as a “mental illness” in the Diagnostic and Statistical Manual of Mental Disorders, Third Edition. This test had been admitted into evidence as an authoritative text, authenticated by Dr. Goff.
Dr. Goff’s opinion as to Gene’s potential for harm may have also lost much of its weight when it was revealed that the information upon which his opinion was based was incomplete. He was unaware of a number of violent actions allegedly taken by Gene, as well as a number of episodes in which Gene exhibited quite inappropriate sexual behavior.
Much lay testimony was offered to rebut Dr. Goff’s opinion. That testimony indicated that Gene had exhibited violent and inappropriate behavior. For example, it was alleged that he physically and verbally threatened and abused both his mother and grandmother; that he had at least attempted to have sexual intercourse with his seven-year-old sister; that he often ran away from home; that he often urinated or defecated at inappropriate times, and that he often “flashed” young girls. Much other inappropriate behavior was also suggested by the testimony, but our recitation of such in this decision will be of no help to this troubled young child. It will suffice to say that this testimony added much support to the trial judge’s decision in this case.
In light of the presumption of correctness, the questionable testimony of Dr. Goff, and the lay testimony in rebuttal, it is our opinion that the trial judge did not commit error by denying Mental Health’s petition for relief. Mental Health simply failed to meet its burden of proof. This decision is affirmed.
AFFIRMED.
BRADLEY and HOLMES, JJ., concur.